GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
MICHAEL HOLECEK, SBN 281034
  mholecek@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

JOSHUA S. LIPSHUTZ, SBN 242557
  jlipshutz@gibsondunn.com
AUSTIN V. SCHWING, SBN 211696
  aschwing@gibsondunn.com
PETER C. SQUERI, SBN 286249
  psqueri@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306

LITTLER MENDELSON, P.C.
ANDREW M. SPURCHISE, SBN 245998
  aspurchise@littler.com
SOPHIA BEHNIA, SBN 289318
  sbehnia@littler.com
333 Bush Street, 34th Floor
San Francisco, CA 94105
Telephone:    415.433.1940
Facsimile:    415.399.8940

Attorneys for Defendant DOORDASH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MANUEL MAGANA, on behalf of himself and all others similarly situated, | CASE NO. 4:18-cv-03395-PJH |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| DOORDASH, INC., | |
| Defendant. | Hearing Date: September 12, 2018 |
| | Hearing Time: 9:00 a.m. |
| | Hearing Place: Courtroom 3 |
| | Judge: Hon. Phyllis Hamilton |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 12, 2018, at 9:00 a.m., or as soon as the matter may be heard before the Honorable Phyllis Hamilton of the United States District Court for the Northern District of California in the Oakland Courthouse, Courtroom 3, Third Floor, 1301 Clay Street, Oakland, California 94612, Defendant DoorDash, Inc. will and does move this Court for an order compelling arbitration on an individual basis of the claims of Plaintiff Manuel Magana and staying proceedings.  This motion is brought on the grounds that Plaintiff's claims against DoorDash are subject to a valid and enforceable arbitration agreement that requires Plaintiff to arbitrate those claims on an individual basis.  *See* 9 U.S.C. §§ 3–4.

DoorDash's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Stanley Tang, the concurrently filed Declaration of Theane Evangelis, any other matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.

Dated:  July 12, 2018

GIBSON, DUNN & CRUTCHER LLP


By:   */s/  Theane Evangelis*
Theane Evangelis

Attorneys for Defendant
DOORDASH, INC.

Gibson, Dunn &
Crutcher LLP

**CONTENTS**

I.      INTRODUCTION ......................................................................................... 7

II.     STATEMENT OF RELEVANT FACTS ..................................................... 7

        A.      DoorDash's Platform Connects Customers, Restaurants, And Delivery
                Contractors ...................................................................................... 7

        B.      The Parties' Independent Contractor Agreement............................ 8

        C.      Plaintiff Filed This Putative Class Action Lawsuit Against DoorDash
                Notwithstanding His Agreement To Individually Arbitrate Disputes ...................... 12

III.    PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HIS CLAIMS ON AN
        INDIVIDUAL BASIS................................................................................ 12

        A.      The Arbitration Agreement Is Governed By The Federal Arbitration Act................ 13

        B.      The Arbitration Agreement Is Valid And Must Be Enforced ..................... 14

                1.      The Delegation Clause In The Arbitration Agreement Is Valid And
                        Enforceable .................................................................. 14

                2.      The Gateway Issues Under The FAA Have Been Satisfied.......................... 16

        C.      The Class Action Waiver Is Valid And Enforceable ................................. 19

IV.     CONCLUSION ......................................................................................... 20

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ................................................................................................................13

5

6

*Am. Express Corp. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ..................................................................................................................7

7

8

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ....................................................................................................7, 13, 20

9

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ..........................................................................................14, 15

10

11

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006) ................................................................................................................13

12

13

*Circuit City Stores, Inc. v. Ahmed*,
    283 F.3d 1198 (9th Cir. 2002) ..........................................................................................15, 16

14

*DIRECTV, Inc. v. Imurgia*,
    136 S. Ct. 463 (2015) ..............................................................................................................13

15

16

*Div. of Labor Law Enforc. v. Transpacific Transp.*,
    69 Cal. App. 3d 268 (1977) ....................................................................................................16

17

18

*DoorDash, Inc. v. Marciano*,
    No. 2015-1-CV-287843 (Super. Ct. Santa Clara County Mar. 21, 2016) ..............................19

19

*Edwards v. DoorDash, Inc.*
    2016 WL 7852532, (S.D. Tex. Dec. 8, 2016, No. H-16-2255), *report and
    recommendation adopted*, 2017 WL 244862 (S.D. Tex. Jan. 19, 2017), *aff'd*, 888
    F.3d 738 (5th Cir. 2018) ........................................................................................................19

20

21

*Edwards v. DoorDash, Inc.*,
    2017 WL 5514302, (S.D. Tex. Oct. 18, 2017, No. 16-2255), *report and
    recommendation adopted*, 2017 WL 5514707 (S.D. Tex. Nov. 16, 2017) ............................19

22

23

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ................................................................................................................18

24

25

*Epic Sys. Corp. v. Lewis*,
    584 U.S. Slip Op. (2018) ..........................................................................................7, 13, 17, 20

26

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh Inc. v. 100 Oak Street*,
    35 Cal. 3d 312 (1983) ............................................................................................................14

27

28

DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 4:18-CV-03395-PJH

Gibson, Dunn &
Crutcher LLP

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995)................................................................................................16

*Green Tree Fin. Corp. v. Randolph*,
    531 U.S. 79 (2000)..................................................................................................13

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
    522 U.S. 576 (2008)................................................................................................13

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002)..................................................................................................14

*Kilgore v. KeyBank, Nat'l Ass'n*,
    718 F.3d 1052 (9th Cir. 2013)............................................................................15, 16

*Levin v. Caviar, Inc.*,
    146 F. Supp. 3d 1146 (N.D. Cal. 2015) .................................................................17

*Long v. Provide Commerce, Inc.*,
    245 Cal. App. 4th 855 (2016) .................................................................................17

*Lyons v. DoorDash, Inc.*,
    No. 2:17-cv-01496 (C.D. Cal. May 19, 2017) ........................................................19

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
    89 Cal. App. 4th 1042 (2001) .................................................................................17

*Marko v. DoorDash, Inc.*
    No. BC659841 (Super. Ct. L.A. County May 29, 2018) ........................................7, 18

*Mastrobuono v. Shearson Lehman Hutton*,
    514 U.S. 52 (1995)..............................................................................................13, 20

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*,
    109 Cal. App. 4th 1705 (2003) ...............................................................................16

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)......................................................................................17

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016).........................................................................14, 15, 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)...............................................................................................13, 14

*Perry v. Thomas*,
    482 U.S. 483 (1987)................................................................................................13

*Preston v. Ferrer*,
    552 U.S. 346 (2008)................................................................................................13

Gibson, Dunn &
Crutcher LLP

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ................................................................................................................14

*Rosenthal v. Great W. Fin. Sec. Corp.*,
    14 Cal. 4th 394 (1996) .........................................................................................................16

*Stewart v. Preston Pipeline Inc.*,
    134 Cal. App. 4th 1565 (2005) ...........................................................................................16

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ............................................................................................................20

*Strotz v. Dean Witter Reynolds, Inc.*,
    223 Cal. App. 3d 208 (1990), *overruled on other grounds by Rosenthal v. Great
    W. Fin. Secs. Corp.*, 14 Cal. 4th 394 (1996) .....................................................................17

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ...............................................................................17

*Tompkins v. 23andMe, Inc.*,
    2014 WL 2903752 (N.D. Cal. June 25, 2014) ...................................................................17

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) .....................................................................................................16, 18

*Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) ............................................................................................................19

*Wagner v. Stratton Oakmont, Inc.*,
    83 F.3d 1046 (9th Cir. 1996) ..............................................................................................18

**Statutes**

9 U.S.C. § 2 ....................................................................................................................................13

9 U.S.C. § 3 ...............................................................................................................................7, 20

9 U.S.C. § 4 ....................................................................................................................................14

Cal. Civ. Code § 1550 ..............................................................................................................16, 17

Cal. Civ. Code § 1556 ..............................................................................................................16, 17

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 4:18-CV-03395-PJH

## I.   INTRODUCTION

Plaintiff Manuel Magana's Class Action Complaint against Defendant DoorDash, Inc., asserts wage and hour claims under the California Labor Code based on the alleged misclassification of putative class members as independent contractors.   DoorDash disputes Plaintiff's claims, but as a threshold matter, Plaintiff cannot litigate these claims in this Court or pursue class-wide relief because Plaintiff and DoorDash entered into an Arbitration Agreement that contains a class action waiver, and Plaintiff did not opt out of that agreement despite having the opportunity to do so.

The United States Supreme Court has repeatedly held that arbitration agreements containing class action waivers must be enforced.  *See Epic Sys. Corp. v. Lewis*, 584 U.S. at __, Slip Op. at 1–2 (2018); *Am. Express Corp. v. Italian Colors Rest.*, 570 U.S. 228, 238–39 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011).  The parties' Arbitration Agreement here, including the class action waiver contained in it, is valid and enforceable under the FAA, and covers all of the claims alleged by Plaintiff in this action.  Indeed, the Los Angeles Superior Court, examining the same Arbitration Agreement at issue here, recently granted DoorDash's petition to compel arbitration of the same claims.  *Marko v. DoorDash, Inc.*, No. BC659841 (Super. Ct. L.A. County May 29, 2018), Order Granting In Part Defendant DoorDash, Inc.'s Petition To Compel Arbitration, at p. 2 (attached as Ex. A to Declaration of Theane Evangelis ("Evangelis Decl.")).

That same result should follow here.  DoorDash respectfully requests that the Court compel Plaintiff to arbitrate his claims on an individual basis and stay proceedings in this Court pending arbitration.  9 U.S.C. § 3 ("If any suit . . . be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .") (emphasis added).

## II.   STATEMENT OF RELEVANT FACTS

### A.   DoorDash's Platform Connects Customers, Restaurants, And Delivery Contractors

DoorDash is a technology company headquartered in San Francisco, California that facilitates food delivery through its online platform.  Declaration of Stanley Tang ("Tang Decl.") ¶ 4.  The platform connects customers, a broad array of restaurants, and independent contractor delivery

providers ("contractors"). *Id.* Customers can access the platform via the DoorDash website or a mobile application ("DoorDash app") on a smartphone. *Id.* Contractors typically receive delivery opportunities via the DoorDash app on their smartphone or other mobile device. *Id.*

## B.   The Parties' Independent Contractor Agreement

From the time DoorDash launched until approximately September 5, 2016, DoorDash entered into hardcopy independent-contractor agreements with California-based contractors. Tang Decl. ¶ 6. Pursuant to DoorDash's ordinary business practices, Plaintiff signed the hardcopy independent-contractor agreement on May 12, 2014, when he signed up to create a DoorDash account. *Id.*

On or around September 5, 2016, DoorDash began using electronic independent-contractor agreements ("ICAs") with contractors such as Plaintiff. Tang Decl. ¶ 8. Contractors who signed up with DoorDash after September 5, 2016, could accept the electronic ICA as part of the sign-up process. *Id.* Contractors like Plaintiff who were already signed up as of September 5, 2016, were given an opportunity to accept the ICA when they logged into the DoorDash mobile app.[1] *Id.* Specifically, when a contractor such as Plaintiff logged into the mobile app on or after September 5, 2016, using his or her unique username and password for the first time after the electronic ICA went into place, the contractor was prompted to review and accept the ICA. *Id.* The mobile app presented the ICA—which included an arbitration agreement—to contractors through a "pop up" window on their mobile device in the following format:

---

[1] Once the contractor accepted, the ICA then superseded the hardcopy independent contractor agreement he or she had previously signed. Tang Decl. ¶ 8, Ex. A at XIII.1.

DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 4:18-CV-03395-PJH

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16  *Id.*, Ex. A.  Notably, the first screen in the pop-up advised contractors, in bold and capitalized text, of

17  the existence and importance of the arbitration agreement, as well as their right to opt out of that

18  agreement.

19          After being presented with the pop-up, contractors could scroll through the ICA at their leisure

20  by clicking on the bright red hyperlink to the complete text of the agreement.  Tang Decl. ¶ 9.  To

21  continue beyond the ICA and begin receiving delivery opportunities, however, contractors had to

22  manifest their consent to the ICA by: (1) checking the box indicating "I have read, understand, and

23  agree to the Independent Contractor Agreement," and (2) clicking "Agree."  *Id.*  As explained below,

24  arbitration was not mandatory, and the contractor could still receive delivery opportunities if he or she

25  opted out of arbitration at the time of (or within 30 days of) accepting the ICA.

26          On September 6, 2016 at 7:20 a.m., Plaintiff electronically accepted the ICA when he signed

27  into the DoorDash app and checked the box next to the text stating, "I have read, understand, and agree

28  to the Independent Contractor Agreement," and then clicked "Agree."  In addition to the electronic

1   record showing Plaintiff's acceptance of the ICA (Tang Decl. ¶ 10, Ex. B), the records of Plaintiff's

2   deliveries on September 6, 2016, and thereafter confirm that Plaintiff accepted the ICA.  As noted

3   above, contractors are unable to receive delivery opportunities through the app without first accepting

4   the ICA.

5        The following language appears in bold, capitalized text in the second paragraph of the first

6   page of the ICA to put the user on notice of the existence of the Arbitration Agreement:

> **IMPORTANT: PLEASE REVIEW THIS AGREEMENT CAREFULLY. IN PARTICULAR, PLEASE REVIEW THE MUTUAL ARBITRATION PROVISION IN SECTION XI, AS IT REQUIRES THE PARTIES (UNLESS YOU OPT OUT OF ARBITRATION AS PROVIDED BELOW) TO RESOLVE DISPUTES ON AN INDIVIDUAL BASIS, TO THE FULLEST EXTENT PERMITTED BY LAW, THROUGH FINAL AND BINDING ARBITRATION. BY ACCEPTING THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS, INCLUDING SECTION XI, AND HAVE TAKEN THE TIME AND SOUGHT ANY ASSISTANCE NEEDED TO COMPREHEND THE CONSEQUENCES OF ACCEPTING THIS AGREEMENT.**

*Id.* ¶ 8, Ex. A at p. 1.

        Section XI of the ICA is entitled "MUTUAL ARBITRATION PROVISION." *Id.* § XI.  Under

that section, "CONTRACTOR and DOORDASH mutually agree to resolve any justiciable disputes

between them exclusively through final and binding arbitration instead of filing a lawsuit in court." *Id.*

§ XI.1.  That provision provides as follows:

> CONTRACTOR and DOORDASH **mutually agree to resolve any justiciable disputes between them exclusively through final and binding arbitration** instead of filing a lawsuit in court.  This arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. §§ 1–16) ("FAA") and shall apply to any and all claims arising out of or relating to this Agreement, CONTRACTOR's classification as an independent contractor, CONTRACTOR's provision of Contracted Services to consumers, the payments received by CONTRACTOR for providing services to consumers, the termination of this Agreement and all other aspects of CONTRACTOR's relationship with DOORDASH, past, present or future, whether arising under federal, state or local statutory and/or common law, including without limitation harassment, discrimination or retaliation claims and claims arising under or related to the Civil Rights Act of 1964 (or its state or local equivalents), Americans With Disabilities Act (or its state or local equivalents), Age Discrimination in Employment Act (or its state or local equivalents), Family Medical Leave Act (or its state or local equivalents), or Fair Labor Standards Act (or its state or local equivalents), state and local wage and hour laws, state and local statutes or regulations addressing the same or similar subject matters, and all other federal, state or local claims arising out of or relating to CONTRACTOR's relationship or the termination of that relationship with DOORDASH.  The parties expressly agree that this Agreement shall be governed by the FAA even in the event

Gibson, Dunn & Crutcher LLP

CONTRACTOR and/or DOORDASH are otherwise exempted from the FAA.  Any disputes in this regard shall be resolved exclusively by an arbitrator.  In the event, but only in the event, the arbitrator determines the FAA does not apply, the state law governing arbitration agreements in the state in which the CONTRACTOR operates shall apply.

*Id.* § XI.1 (emphasis added).

The Arbitration Agreement also contains a class action waiver that provides that both Plaintiff and DoorDash "waive their right to have any dispute or claim brought, heard or arbitrated as, or to participate in, a class action, collective action, and/or representative action, and an arbitrator shall not have any authority to hear or arbitrate any class, collective or representative action ('Class Action Waiver')."  *Id.* § XI.3.  Moreover, the parties agreed that "any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator."  *Id.*

Notably, the Arbitration Agreement contains a delegation clause providing that the arbitrator will decide all issues of arbitrability:  "All other disputes with respect to whether this Mutual Arbitration Provision is unenforceable, unconscionable, applicable, valid, void or voidable shall be determined exclusively by an arbitrator, and not by any court."  *Id.*

The Arbitration Agreement also contains numerous consumer-friendly provisions designed to make the arbitration cost-effective, efficient, and fair for both parties.  For example, the Arbitration Agreement invokes the well-established American Arbitration Association ("AAA") rules for the proceeding and provides a hyperlink that facilitates accessing those rules.  *Id.* §§ XI.5, XI.7.  The Arbitration Agreement also allows Plaintiff to demand that the arbitration take place within 45 miles of his residence, DoorDash agrees to "pay all of the Arbitrator's fees and costs," discovery is permitted, and "the Arbitrator may award all remedies to which a party is entitled under applicable law and which would otherwise be available in a court of law . . . ."  *Id.* § XI.5.

Although the ICA has an Arbitration Agreement, DoorDash does not force it on its contractors.  To the contrary, the ICA states in bold text that each contractor has a right to opt out of the arbitration provision within 30 days of the effective date of the ICA.  *Id.* § XI.8.  The second paragraph of the ICA references this opt-out right in bold, capitalized text.  *Id.* at p. 1.  Similarly, Section XI.8 of the ICA explains this opt-out right in bold font:

Gibson, Dunn &
Crutcher LLP

**CONTRACTOR's Right to Opt Out of Arbitration Provision.**
**Arbitration is not a mandatory condition of CONTRACTOR's**
**contractual relationship with DOORDASH, and therefore**
**CONTRACTOR may submit a statement notifying DOORDASH that**
**CONTRACTOR wishes to opt out and not be subject to this MUTUAL**
**ARBITRATION PROVISION.** In order to opt out, CONTRACTOR must
notify DOORDASH of CONTRACTOR's intention to opt out by sending an
email to dasheroptout@doordash.com stating CONTRACTOR's intention
to opt out. In order to be effective, CONTRACTOR's opt out notice must
be provided within 30 days of the effective date of this Agreement. If
CONTRACTOR opts out as provided in this paragraph, CONTRACTOR
will not be subject to any adverse action from DOORDASH as a
consequence of that decision and he/she may pursue available legal remedies
without regard to this Mutual Arbitration Provision. If CONTRACTOR
does not opt out within 30 days of the effective date of this Agreement,
CONTRACTOR and DOORDASH shall be deemed to have agreed to this
Mutual Arbitration Provision. CONTRACTOR has the right to consult with
counsel of CONTRACTOR's choice concerning this Mutual Arbitration
Provision (or any other provision of this Agreement).

*Id.* § XI.8 (emphasis in original).

Although Plaintiff had the right to opt out of the ICA's Arbitration Agreement, he did not. Tang

Decl. ¶ 12. Plaintiff accepted the ICA on September 6, 2016 by checking the box indicating "I have

read, understand, and agree to the Independent Contractor Agreement." *Id.* ¶ 10, Ex. B. Plaintiff did

not opt out of arbitration within 30 days of acceptance. *Id.* ¶ 12. Accordingly, under the terms of the

ICA, Plaintiff and DoorDash agreed to arbitrate their disputes.

**C.      Plaintiff Filed This Putative Class Action Lawsuit Against DoorDash Notwithstanding**
**His Agreement To Individually Arbitrate Disputes**

On May 8, 2018, Plaintiff filed this lawsuit against DoorDash. Plaintiff's complaint alleges

that Plaintiff and other contractors who completed deliveries in California using the DoorDash platform

are misclassified as independent contractors, and that DoorDash is liable for: (1) failure to reimburse

business expenses; (2) failure to pay minimum wage; (3) willful misclassification; (4) failure to

provide wage statements; and (5) unlawful and/or unfair business practices.

### III.      PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE
### HIS CLAIMS ON AN INDIVIDUAL BASIS

The FAA controls the parties' arbitration agreement, and imposes a heavy burden on Plaintiff

to avoid arbitration. Here, the parties' agreement delegates ***to the arbitrator*** the two primary

"gateway" issues—whether there is a valid arbitration agreement and whether it covers this dispute.

In any event, as described below, both gateway issues are easily satisfied here. The only gateway

issue reserved for the Court is whether Plaintiff's class action waiver is enforceable.  As explained below, the U.S. Supreme Court's recent decision in *Epic Systems* confirms that the class action waiver is enforceable.

## A.     The Arbitration Agreement Is Governed By The Federal Arbitration Act

The FAA declares a "liberal federal policy" favoring the enforcement of arbitration agreements. *Concepcion*, 563 U.S. at 346; *Epic Sys.*, 584 U.S. at __, Slip Op. at 5.  Section 2 of the FAA provides: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . ***shall be valid, irrevocable, and enforceable***, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (emphasis added).

The FAA was enacted to overcome longstanding judicial hostility to arbitration agreements. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 522 U.S. 576, 581 (2008); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  It not only placed such agreements on equal footing with other contracts, but also established a federal policy in favor of arbitration agreements.  *See Perry v. Thomas*, 482 U.S. 483, 489 (1987); *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89–90 (2000).  The policy is so significant that "even claims arising under a statute designed to further important social policies may be arbitrated . . . ."  *Green Tree*, 531 U.S. at 90.  Moreover, the FAA preempts all conflicting state laws, which means states cannot create special exceptions to the enforcement of arbitration agreements governed by the FAA.  *See Preston v. Ferrer*, 552 U.S. 346, 353 (2008) ("The FAA's displacement of conflicting state law is 'now well-established,' and has been repeatedly affirmed" (citations omitted)). If an agreement is governed by the FAA, courts must effectuate the intent of Congress "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Here, the Arbitration Agreement is indisputably governed by the FAA.  First, the Agreement expressly states that it is governed by the FAA (Tang Decl. ¶ 8, Ex. A at XI.1), which is sufficient to bring it within the purview of the FAA.  *See Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63–64 (1995); *DIRECTV, Inc. v. Imurgia*, 136 S. Ct. 463, 468–71 (2015).  Second, the Agreement "affect[s] commerce."  *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74, 281 (1995)

1    (FAA's requirement that an agreement "involve[e] commerce" is "broad and is indeed the functional

2    equivalent of 'affecting'" commerce, "even if the parties did not contemplate an interstate commerce

3    connection").  The FAA and related federal substantive law therefore govern the enforceability of the

4    Arbitration Agreement.

5    **B.      The Arbitration Agreement Is Valid And Must Be Enforced**

6              Consistent with the principle that arbitration is a matter of contract, the FAA requires courts to

7    compel arbitration "in accordance with the terms of the agreement" upon the motion of a party to the

8    agreement. 9 U.S.C. § 4.  In determining whether to compel arbitration under the FAA, courts generally

9    look at two "gateway" issues: (1) whether there is a valid agreement to arbitrate between the parties;

10   and (2) whether the agreement covers the dispute.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537

11   U.S. 79, 83–84 (2002).  If there is any doubt as to the proper interpretation of the agreement on any

12   issue related to arbitrability, the FAA "establishes that . . . [it] should be resolved ***in favor of***

13   ***arbitration***, whether the problem at hand is the construction of the contract language itself or an

14   allegation of waiver, delay, or a like defense of arbitrability."  *Moses H. Cone*, 460 U.S. at 24–25

15   (emphasis added); *see also Ericksen, Arbuthnot, McCarthy, Kearney & Walsh Inc. v. 100 Oak Street*,

16   35 Cal. 3d 312, 320 (1983) (citing *Moses H. Cone* for same).

17   **1.      The Delegation Clause In The Arbitration Agreement Is Valid And Enforceable**

18             Before reaching these gateway issues, however, a court must first examine the agreement to

19   determine whether the parties agreed to commit threshold questions of arbitrability to the arbitrator.

20   *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway

21   issue is simply an additional antecedent agreement the party seeking arbitration asks the court to

22   enforce . . . .").  If the parties have "clearly and unmistakably" agreed to delegate questions of

23   arbitrability to the arbitrator, then the arbitrator must decide the threshold issues.  *Howsam*, 537 U.S.

24   at 83; *see also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (holding that

25   clear and unmistakable delegation clauses must be enforced under binding Supreme Court precedent);

26   *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) (clearly and unmistakably delegated

27   arbitrability issues to arbitrator).

28

1

### a.     The Delegation Clause Is Clear, Unmistakable, and Enforceable

2       Here, the Arbitration Agreement clearly and unmistakably provides that, except for questions

3 regarding the enforceability of the Class Action Waiver, "[a]ll other disputes with respect to whether

4 this Mutual Arbitration Provision is unenforceable, unconscionable, applicable, valid, void or voidable

5 ***shall be determined exclusively by an arbitrator***, and not by any court." Tang Decl. ¶ 8, Ex. A at XI.3

6 (emphasis added).  Moreover, the Arbitration Agreement expressly incorporates the AAA Commercial

7 Arbitration Rules ("AAA Rules").  *Id.* at XI.5.  Rule 7 of the AAA Rules provides: "The arbitrator

8 shall have the power to rule on his or her own jurisdiction, including any objections with respect to the

9 existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim[.]"

10 Evangelis Decl. Ex. D at R.7(a).  The express incorporation of the AAA Rules therefore constitutes

11 further clear and unmistakable evidence of the parties' intent to arbitrate the threshold issue of

12 arbitrability.  *See Brennan*, 796 F.3d at 1130–31 ("[I]ncorporation of the AAA rules constitutes clear

13 and unmistakable evidence that contracting parties agree to arbitrate arbitrability").  The Court should

14 enforce this clear and unmistakable agreement and decide only the issue of the enforceability of the

15 Class Action Waiver.  *See Mohamed*, 848 F.3d at 1209 (enforcing delegation clause that carved out

16 challenges to class, collective and representative waivers).

17       While it is generally Plaintiff's burden to prove that an agreement is unconscionable, DoorDash

18 notes that courts have repeatedly held that if an arbitration agreement provides an opportunity to opt

19 out, it is not adhesive and there can be no procedural unconscionability.  *See Mohamed*, 848 F.3d at

20 1211; *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002); *Kilgore v. KeyBank,*

21 *Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (en banc).  Courts have therefore upheld delegation

22 clauses found in voluntary arbitration agreements on the ground that they are not unconscionable.  *See*

23 *Mohamed*, 848 F.3d at 1211 (upholding delegation clause found in arbitration agreement that provided

24 right to opt out).

25       Here, DoorDash conspicuously notified Plaintiff of his right to opt out of the Arbitration

26 Agreement on the very first page of the ICA, as well as in a standalone section in the Arbitration

27 Agreement with the underlined and bolded title, "**CONTRACTOR's Right to Opt Out of**

28 **Arbitration Provision**."  Tang Decl. ¶ 8, Ex. A at XI.8.  The Arbitration Agreement states that:

(1) arbitration is "not a mandatory condition of [Plaintiff's] contractual relationship with DOORDASH"; and (2) Plaintiff would "not be subject to any adverse action from DOORDASH" if he opted out. *Id.* Plaintiff had 30 days to notify DoorDash of his desire to opt out, and could have easily done so by sending an email. *Id.* This meaningful opportunity to opt out renders the agreement voluntary and precludes any finding of procedural unconscionability. *See Mohamed*, 848 F.3d at 1211; *Circuit City Stores*, 283 F.3d at 1199; *Kilgore*, 718 F.3d at 1059. Plaintiff should be required to arbitrate the threshold issue of arbitrability.

### 2.  The Gateway Issues Under The FAA Have Been Satisfied

Even if the Court were to find that it, and not an arbitrator, should determine arbitrability despite the delegation clause (it should not), the Court should compel Plaintiff's claims to individual arbitration because both of the "gateway" issues under the FAA have been met here.

### a.  A Valid Agreement To Arbitrate Exists

"[A]rbitration is a matter of contract . . . ." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Ordinary state law principles governing the formation of contracts are therefore used to determine whether the parties agreed to arbitrate. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1712 (2003). The moving party's burden is light in this regard. DoorDash need only show, by a preponderance of the evidence, that an agreement to arbitrate exists. *See Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996).

Under California law, a valid contract exists when (1) the parties are capable of contracting, and there is (2) a lawful object, (3) mutual consent, and (4) sufficient cause or consideration. Cal. Civ. Code § 1550; *see also Div. of Labor Law Enforc. v. Transpacific Transp.*, 69 Cal. App. 3d 268, 275 (1977). The Arbitration Agreement contained in the ICA meets all of these requirements. First, there is no dispute that the parties are capable of contracting. *See* Cal. Civ. Code § 1556 ("All persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights."). Second, there is also no dispute that the Arbitration Agreement had a lawful purpose, *i.e.*, the prompt and efficient resolution of disputes in arbitration. *See Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1586 (2005) (finding arbitration provision had lawful purpose of resolving

Gibson, Dunn & Crutcher LLP

litigation); *see also Epic Sys.*, 584 U.S. at __, Slip Op. at 5 (by enacting the FAA, "Congress directed courts to . . . treat arbitration agreements as 'valid, irrevocable, and enforceable'").

Third, there is mutual consent.  Plaintiff affirmatively acknowledged his intent—after ample opportunity for review—to be bound by the terms of the ICA, including the conspicuous Arbitration Agreement contained therein.  *See Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049–50 (2001) ("Every contract requires mutual assent or consent (Civ. Code, §§ 1550, 1565), and ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms.").  Plaintiff's manifestation of his acceptance to the ICA by electronically checking a box and clicking a button confirms his agreement.  *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75–80 (2d Cir. 2017) (vacating order denying motions to compel arbitration after holding that availability of a contract "only by hyperlink does not preclude a determination of reasonable notice" and that the plaintiff "unambiguously manifested his assent to [the contract] as a matter of California law").[2]  Moreover, in addition to Plaintiff's affirmative assent, DoorDash provided Plaintiff ample opportunity to review the ICA, and 30 days after accepting the ICA to opt out of the Arbitration Agreement.  Tang Decl. ¶ 8, Ex. A at XI.8.  Plaintiff chose not to opt out of the Arbitration Agreement (*id.* ¶ 15), further evidencing his consent to be bound by its terms.

Finally, the Arbitration Agreement is supported by valid consideration: the parties' mutual promises to arbitrate disputes.  *See Strotz v. Dean Witter Reynolds, Inc.*, 223 Cal. App. 3d 208, 216 (1990), *overruled on other grounds by Rosenthal v. Great W. Fin. Secs. Corp.*, 14 Cal. 4th 394 (1996) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other.").  All of the elements

---

[2]  *See also*, *e.g.*, *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015) (compelling arbitration and finding contract was formed when plaintiff clicked on a button to indicate assent to an agreement whose terms were accessible by hyperlink); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014) (holding that valid contract had been formed when plaintiff "clicked a box or button that appeared near a hyperlink to the [contract] to indicate acceptance of the [contract]"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910–12 (N.D. Cal. 2011) (compelling arbitration and finding videogame user bound by Zynga's terms of service because she clicked the "accept" button immediate above a hyperlink which contained its terms); *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862–63 (2016) (distinguishing a "browsewrap" agreement seeking to bind plaintiff to Terms of Use agreement merely by visiting the website, from an enforceable "clickwrap" agreement which requires an affirmative act of consent).

Gibson, Dunn & Crutcher LLP

DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 4:18-CV-03395-PJH

for the valid formation of an agreement to arbitrate exist here.

**b.      Plaintiff's Claims Are Covered By The Arbitration Agreement**

"[A]bsent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Courts must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996); *see also United Steelworkers*, 363 U.S. at 582–83 (courts must conclude disputes are covered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.").

Here, there is no ambiguity in the agreement.  Rather, the language of the Arbitration Agreement makes clear that Plaintiff's claims are subject to arbitration.  Specifically, Plaintiff agreed that the Arbitration Agreement would apply to:

> ***any and all claims arising out of or relating to*** this Agreement, ***CONTRACTOR's classification as an independent contractor***, CONTRACTOR's provision of Contracted Services to consumers, ***the payments received by CONTRACTOR for providing services to consumers***, the termination of this Agreement, and all other aspects of CONTRACTOR's relationship with DOORDASH, past, present or future, whether arising under federal, state or local statutory and/or common law, including without limitation . . . ***claims arising under or related to . . . [the] Fair Labor Standards Act (or its state or local equivalents), state and local wage and hour laws***, state and local statutes or regulations addressing the same or similar subject matters, and all other federal, state or local claims arising out of or relating to CONTRACTOR's relationship or the termination of that relationship with DOORDASH.

Tang Decl. ¶ 8, Ex. A at XI.1 (emphasis added).  In his Complaint, Plaintiff claims he was misclassified as an independent contractor, and alleges causes of action for failure to reimburse business expenses, failure to pay minimum wage, willful misclassification, failure to provide pay statements, and unlawful and unfair business practices.  All of these claims fall squarely within the scope of the Arbitration Agreement.

Examining the same Arbitration Agreement here, the Los Angeles Superior Court recently granted DoorDash's petition to compel arbitration of claims based on plaintiffs' independent-contractor status and all claims for damages. *Marko v. DoorDash, Inc.*, No. BC659841, Order Granting In Part

Defendant DoorDash, Inc.'s Petition To Compel Arbitration, at 2 (Super. Ct. L.A. County May 29, 2018) (Evangelis Decl., Ex. A.).  That same result should follow here.

Indeed, in each instance that DoorDash has moved to compel arbitration in accord with its arbitration agreement, the court has compelled arbitration.  *See, e.g.*, *Edwards v. DoorDash, Inc.*, 2017 WL 5514302, at *13 (S.D. Tex. Oct. 18, 2017, No. 16-2255), *report and recommendation adopted*, 2017 WL 5514707 (S.D. Tex. Nov. 16, 2017) (compelling independent contractors who agreed to the DoorDash ICA to arbitrate); *Edwards v. DoorDash, Inc.* 2016 WL 7852532, at *14 (S.D. Tex. Dec. 8, 2016, No. H-16-2255), *report and recommendation adopted*, 2017 WL 244862 (S.D. Tex. Jan. 19, 2017) (enforcing DoorDash arbitration agreement after severing two provisions which are not in Plaintiff's ICA), *aff'd*, 888 F.3d 738 (5th Cir. 2018); Evangelis Decl. Ex. B (Order re: Petition to Compel Arbitration of DLSE Complaint and Stay DLSE Proceedings, *DoorDash, Inc. v. Marciano*, No. 2015-1-CV-287843 (Super. Ct. Santa Clara County, Mar. 21, 2016) (enforcing DoorDash ICA and ordering arbitration of complaint filed before California Division of Labor Standards Enforcement)); *see also* Evangelis Decl. Ex. C (Order Granting Joint Stip. Ordering Pl's Claims Into Arbitration and Staying PAGA Claims, Dkt. 21, *Lyons v. DoorDash, Inc.*, No. 2:17-cv-01496 (C.D. Cal. May 19, 2017)).  Indeed, in *Lyons*, the plaintiff stipulated to arbitration upon reviewing DoorDash's motion to compel.  *Id.*  Plaintiff can offer the Court no reason to adopt an aberrant result here.

## C.     The Class Action Waiver Is Valid And Enforceable

As noted above, under the delegation clause in the Arbitration Agreement, the parties agreed that the Court would decide the question of the enforceability of the Class Action Waiver.  Tang Decl. at ¶ 8, Ex. A at XI.3.  It is now well settled that class action waivers in arbitration agreements governed by the FAA are valid and enforceable.  In *Marko* (p. 2), the Superior Court enforced the class-action waiver in the same Arbitration Agreement, holding that the plaintiffs in that case "shall arbitrate their independent contractor status and claims for damages on an individual basis, rather than on a class basis."  Evangelis Decl. Ex. A.

The United States Supreme Court has held that the "primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced ***according to their terms***."  *Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (emphasis added); *see also*

*Mastrobuono*, 514 U.S. at 53–54 (enforcement of arbitration agreements "according to their terms" is the "central purpose" of the FAA); *Concepcion*, 563 U.S. at 344 (same).  Most recently, the Supreme Court held that this instruction by Congress to enforce arbitration agreements according to their terms "include[s] terms providing for individualized proceedings." *Epic Sys.*, 584 U.S. at __, Slip Op. at 2. Specifically, in *Epic Systems*, the Supreme Court held that class action waivers in arbitration agreements governed by the FAA are enforceable.  *Id.*   The Court rejected the argument that class action waivers are unenforceable under the National Labor Relations Act.  *Id.*

The United States Supreme Court has upheld class action waivers in arbitration agreements in several other cases.  In *Concepcion*, the Court held that the FAA preempted the California Supreme Court's rule restricting enforcement of class action waivers because it interfered with the fundamental attributes of arbitration and created a scheme inconsistent with the FAA.  563 U.S. at 352.[3]  Two years later, in *American Express*, the Supreme Court enforced a class action waiver in an arbitration agreement, noting that courts "must rigorously enforce" arbitration agreements according to their terms, including terms that "specify with whom [the parties] choose to arbitrate their disputes."  570 U.S. at 233.

Under binding United States Supreme Court precedent, the parties' agreement not to pursue class claims is valid and must be enforced.  Plaintiff should be compelled to arbitrate his claims on an individual basis pursuant to the terms of the Arbitration Agreement, and the proceedings in this Court should be stayed pending arbitration.  9 U.S.C. § 3.

## IV.  CONCLUSION

For the foregoing reasons, Defendant requests that this Court compel arbitration and stay proceedings.

---

[3]   The Supreme Court also explained that class arbitration was inconsistent with the fundamental attributes of arbitration.   *Concepcion*, 563 U.S. at 346–48; *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so").  Here, the parties did not agree to class arbitration, and instead expressly prohibited arbitration of claims on a class, collective or representative basis.  Tang Decl. ¶ 8, Ex. A at XI.3.

DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 4:18-CV-03395-PJH

Gibson, Dunn &
Crutcher LLP

1

2 Dated:  July 12, 2018                    GIBSON, DUNN & CRUTCHER LLP

3

4                                          By:  _____*/s/ Theane Evangelis*_____

5                                                   Theane Evangelis

6                                          Attorneys for Defendant DOORDASH, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    GIBSON, DUNN & CRUTCHER LLP
     THEANE EVANGELIS, SBN 243570
2      tevangelis@gibsondunn.com
     MICHAEL HOLECEK, SBN 281034
3      mholecek@gibsondunn.com
     333 South Grand Avenue
4    Los Angeles, CA 90071-3197
     Telephone:     213.229.7000
5    Facsimile:     213.229.7520

6    JOSHUA S. LIPSHUTZ, SBN 242557
       jlipshutz@gibsondunn.com
7    AUSTIN V. SCHWING, SBN 211696
       aschwing@gibsondunn.com
8    PETER C. SQUERI, SBN 286249
       psqueri@gibsondunn.com
9    555 Mission Street, Suite 3000
     San Francisco, CA 94105-0921
10   Telephone:     415.393.8200
     Facsimile:     415.393.8306
11
     LITTLER MENDELSON, P.C.
12   ANDREW M. SPURCHISE, SBN 245998
       aspurchise@littler.com
13   SOPHIA BEHNIA, SBN 289318
       sbehnia@littler.com
14   333 Bush Street, 34th Floor
     San Francisco, CA 94105
15   Telephone:     415.433.1940
     Facsimile:     415.399.8940
16
     Attorneys for Defendant DOORDASH, INC.
17

18                   UNITED STATES DISTRICT COURT

19                NORTHERN DISTRICT OF CALIFORNIA

20                        OAKLAND DIVISION

21   MANUEL MAGANA, on behalf of himself        CASE NO. 4:18-cv-03395-PJH
     and all others similarly situated,
22                                              **PROOF OF SERVICE**
                 Plaintiff,
23                                              Hearing Date: September 12, 2018
           v.                                   Hearing Time: 9:00 a.m.
24                                              Hearing Place: Courtroom 3
     DOORDASH, INC.,                            Judge: Hon. Phyllis Hamilton
25
                 Defendants.                    Action Filed: May 8, 2018
26

27

28

Gibson, Dunn &
Crutcher LLP

                                    PROOF OF SERVICE

## PROOF OF SERVICE

I, Stephanie Balitzer, declare as follows:

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 333 South Grand Avenue, Los Angeles, California 90071, in said County and State.  On July 12, 2018, I served the following document(s):

> **DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES;**
>
> **DECLARATION OF THEANE EVANGELIS IN SUPPORT OF DEFENDANT DOORDASH, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS;**
>
> **DECLARATION OF STANLEY TANG IN SUPPORT OF DEFENDANT DOORDASH, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS;**
>
> **[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

On the parties stated below, by the following means of service:

Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston St., Ste. 2000
Boston, MA  02116
Tel: 617 994-5800
Fax: 617 994-5801
sliss@llrlaw.com

☑ **BY ELECTRONIC TRANSFER TO THE CM/ECF SYSTEM**:  On this date, I electronically uploaded a true and correct copy in Adobe "pdf" format the above-listed document(s) to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system. After the electronic filing of a document, service is deemed complete upon receipt of the Notice of Electronic Filing ("NEF") by the registered CM/ECF users.

☑ **(FEDERAL)** I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 12, 2018

_____
            */s/ Stephanie Balitzer*
            Stephanie Balitzer

Gibson, Dunn & Crutcher LLP