Pages 1 - 49

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Phyllis J. Hamilton, Judge

```
MANUEL MAGANA, ON BEHALF OF      )
HIMSELF AND ALL OTHERS           )
SIMILARLY SITUATED,              )
                                 )
          Plaintiff,             )
                                 )
  VS.                            )     NO. CV 18-03395-PJH
                                 )
DOORDASH, INC.,                  )
                                 )
          Defendant.             )
_____  )
```

Oakland, California
Wednesday, September 26, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:

        LICHTEN & LISS-RIORDAN, P.C.
        729 Boylston Street - Suite 2000
        Boston, MA  02116
    BY: **SHANNON LISS-RIORDAN, ESQUIRE**

For Defendant:

        GIBSON, DUNN & CRUTCHER LLP
        1050 Connecticut Avenue, N.W.
        Washington, D.C.  20036
    BY: **JOSHUA LIPSHUTZ, ESQUIRE**

        GIBSON, DUNN & CRUTCHER LLP
        333 South Grand Avenue
        Los Angeles, CA  90071
    BY: **THEANE EVANGELIS, ESQUIRE**

Reported By:    Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
               Official Reporter

1   **Wednesday - September 26, 2018**                    **9:02 a.m.**

2                      **P R O C E E D I N G S**

3                           **---oOo---**

4          **THE CLERK:**  Calling CV 18-3395, Magana vs. DoorDash,

5   Inc.

6      Counsel, please step forward to the podiums and state your

7   appearances.

8          **MR. LIPSHULTZ:**  Good morning, Your Honor.  Joshua

9   Lipshultz on behalf of defendant DoorDash.  I'll switch sides.

10         **THE COURT:**  Okay.  Good morning.

11         **MS. LISS-RIORDAN:**  Good morning, Your Honor.  I'm

12  Shannon Liss-Riordan on behalf of the plaintiff.

13         **THE COURT:**  All right.  Good morning.

14         **MS. EVANGELIS:**  Good morning, Your Honor.  Theane

15  Evangelis on behalf of DoorDash.

16         **THE COURT:**  Good morning.

17     We have three motions on.  We are going to start first

18  with the Motion to Compel Arbitration and Stay Proceedings.

19     I did have an opportunity to read the Ninth Circuit's

20  decision that came out yesterday.  I know that -- I believe you

21  all submitted a Statement of Recent Decision attaching a copy

22  of that --

23         **MR. LIPSHULTZ:**  That's right, Your Honor.

24         **THE COURT:**  -- decision.  I did get a filing that I

25  just saw a few minutes ago, plaintiff's response, which isn't

1  permitted by our local rules.  I mean, the whole notion of the

2  rule that permits the filing of a Statement of Recent Decision

3  is simply to put before the Court the actual new decision

4  itself without argument, yet you filed a response to it, which

5  isn't contemplated or permitted, so I'm striking that, but of

6  course you can make whatever argument you wish today in

7  response to the filing of that decision.

8       So looking at -- we're going to start first with the

9  Motion to Compel Arbitration as that motion was filed, I

10 believe -- I forget.

11          **MR. LIPSHULTZ:**  July 12th, Your Honor.

12          **THE COURT:**  July 12.  That was the first motion filed

13 so we'll start with it.

14      I have read the decision.  It certainly has an impact on

15 some of the arguments that are raised here, but I want to give

16 you an opportunity to either try to distinguish the case or to

17 tell me why it doesn't apply.

18      This is your motion?

19          **MR. LIPSHULTZ:**  That's correct, Your Honor.

20          **THE COURT:**  Go ahead.

21          **MR. LIPSHULTZ:**  Well, Your Honor, this case belongs in

22 arbitration.  Every court to have considered DoorDash's

23 agreement, arbitration agreement and class waiver, has enforced

24 them, including cases brought by the same counsel representing

25 Mr. Magana here today.

1          It's a voluntarily agreement.  Plaintiff could have opted

2     out of the agreement but did not, and it, frankly, has a lot of

3     provisions in the agreement that are quite worker-friendly.

4     DoorDash, in fact, pays for the entire arbitration.

5          Plaintiff's counsel herself has invoked the same

6     arbitration agreement more than a dozen times to bring the same

7     claims on behalf of other individuals against DoorDash, and

8     there is no reason not to enforce it here.

9          The argument -- the primary argument for not enforcing it

10    here raised by the other side was the FAA Section 1 exemption,

11    arguing that Mr. Magana is a transportation worker and is

12    therefore exempt from the FAA under Section 1, but, again,

13    every court to have considered that question in the context of

14    a local delivery driver has rejected it, including this court.

15         The United States Supreme Court in the *Circuit City*

16    decision explained that the Section 1 exemption must be given a

17    narrow construction.  It covers railway workers, ship workers,

18    airline workers, people who are truly involved in the

19    interstate transportation of cargo.

20         Every court that has looked at pizza delivery drivers

21    or other local food --

22         **THE COURT:**  Wouldn't it apply to DoorDash Dashers if

23    they were engaged in the interstate transportation of meals?

24         **MR. LIPSHULTZ:**  No, Your Honor, it would not.  Under

25    this court's *Vargas* decision, Judge Tigar, just two years ago,

analyzed the same factual context and explained that it applies
only to the types of workers that are engaged in the interstate
transportation of cargo, things that function as sort of the
backbone of the economy:  Railway workers, ship workers.

This court had another decision in the *Levin vs. Caviar*
case brought by the same counsel making the same arguments, and
it rejected it there as well.  Same context:  Food delivery
driver.  These are not -- these are restaurant-prepared meals
that then go to customers.  They're not goods that are
transported in the interstate highway system or the interstate
rail system.

And so even in cases where there have been drivers who
have crossed interstate lines, ancillary to their job -- in
other words, maybe a pizza delivery driver in New York City
delivers a pizza to New Jersey -- that has been found not to
satisfy the Section 1 exemption.

And the Supreme Court has explained that the exemption is
to be given a very narrow construction.  That's in the *Circuit
City* decision.  And no court has found that it has applied in
this context or the context of a company like DoorDash.

That is really the only argument that plaintiff has for
avoiding the arbitration agreement.  There was this *Bickerstaff*
argument that Your Honor referenced about the Georgia Supreme
Court case that allowed people to opt out on behalf of each
other.  The Ninth Circuit yesterday rejected that argument and

1    there is, I believe, no further position from counsel here that

2    that argument is valid, other that she tends to seek *en banc*

3    review.

4              **THE COURT:**  Okay.  All right.

5         Response?

6              **MS. LISS-RIORDAN:**  Yes.  Thank you, Your Honor.

7         So, yes, I do recognize that the Ninth Circuit yesterday

8    ruled on the *Bickerstaff* argument, so we recognize that this

9    Court is now bound by that.

10        My request is -- and I will address the transportation

11   worker exemption argument and there is also the public

12   injunction argument, but if the Court were to disagree with me

13   on all of these arguments, I would request that the Court

14   dismiss the case so that I could take that up as opposed to

15   stay it, and I cited -- I understand that Your Honor has

16   stricken what I filed yesterday, but what I noted and what I'll

17   just note now is that courts, when faced with Motions to Compel

18   Arbitration and the plaintiff wishes to appeal a decision,

19   courts have the discretion to dismiss rather than stay so that

20   the issue can be taken up on appeal.

21        And there's a recent case of *Gonzalez vs. Coverall* -- I

22   can get the cite for you -- where a court in the Central

23   District of California did just that, granted, in fact, a

24   plaintiff's Motion to Dismiss a case after having compelled

25   arbitration so it could go up on appeal.

1    The *Bickerstaff* ruling by the Ninth Circuit yesterday, I

2    recognize it's binding authority on this Court.  I think the

3    decision was -- gave the argument very short shrift.

4            **THE COURT:**  What kind of shrift would you expect a

5    court in the Ninth Circuit, particularly the Ninth Circuit, to

6    give to a Georgia Supreme Court decision based upon state

7    contract law and not the Federal Arbitration Act?

8            **MS. LISS-RIORDAN:**  Yes.  Well, it was based on state

9    law, but it cited to Federal Rule 23 decisions and was, of

10   course, well aware of the Federal Arbitration Act.

11   So I'm not asking this Court to go against what the Ninth

12   Circuit did yesterday, certainly.  I'm just --

13           **THE COURT:**  But even in the absence of the Ninth

14   Circuit's decision yesterday --

15           **MS. LISS-RIORDAN:**  Yes.

16           **THE COURT:**  -- when I read the argument last -- in

17   fact, the case I had on my docket last week raised the same

18   issue, and I think this is about the third time.  I have still

19   not seen anything cited by either you or any of the other

20   lawyers who have been advancing this argument that would

21   persuade me that a Georgia Supreme Court case based upon

22   Georgia contract law and not referring to the Federal

23   Arbitration Act would be persuasive authority here in the

24   Northern District of California, even without the Ninth

25   Circuit.

1          **MS. LISS-RIORDAN:**  Right.  So I understand,

2    Your Honor.

3          So my point is that the logic that was used there, again,

4    it was based on Federal Rule 23 and it was in the context of a

5    Motion to Compel Arbitration.  So obviously the Federal

6    Arbitration Act applied, even if it was not directly addressed

7    by the court.

8          And the -- because there's not any material difference

9    between the Georgia class certification rule, which is

10   equivalent to Rule -- Federal Rule 23 because the Georgia court

11   cited to Federal Rule 23 decisions, my argument is that it

12   would be persuasive.  And I understand it didn't persuade the

13   panel yesterday, but I am simply saying this is a serious

14   argument.  Obviously you're seeing it repeatedly.  At some

15   point, it should be given full consideration, and that's why I

16   would seek ultimately to obtain *en banc* review.

17         It may be in the case that was decided yesterday.  It

18   could be in this case.  It could be in another case.  So I'm

19   only putting that before you just to state we have put forth

20   what I believe to be an argument that merits further discussion

21   and consideration by an appellate court.

22         So all I'm asking is that if you disagree with my other

23   two arguments, which I'm about to make, that you dismiss this

24   case rather than stay it so that I can attempt to make that

25   argument on appeal, which this Court has the discretion to do.

1      And I can -- if you would allow me to submit the cites, I

2   could.  I don't have them in front of me, but they were in my

3   filing yesterday.

4      But that's my argument that I have to make with respect to

5   *Bickerstaff*.

6      Now, could I move on to the --

7      **MR. LIPSHULTZ:**  Can I just address this stay versus

8   dismissal point, or do you want me to do that at the end?

9      **THE COURT:**  No.  You can do it.

10      **MR. LIPSHULTZ:**  9 U.S.C. 3 does not permit dismissal

11   of this case because 9 U.S.C. 3 says that if one party moves to

12   compel arbitration and requests a stay of the action pending

13   arbitration, the court, quote, "shall stay the action."

14      There is not any room for discretion, respectfully, for

15   this Court to dismiss the action.  In fact, orders granting --

16      **THE COURT:**  I don't believe I've ever dismissed a case

17   that I referred to arbitration.

18      **MR. LIPSHULTZ:**  No.  Because orders granting

19   arbitration are not appealable and expressly under the FAA.

20   Orders denying motions to compel arbitration are appealable as

21   a matter of interlocutory review.  Orders granting arbitration

22   are not appealable.  That's a specific design of the FAA to

23   prevent exactly what is happening here, an attempt to draw out

24   a litigation process where the parties should be in

25   arbitration.

1     So respectfully I disagree with counsel on the dismissal

2     point.

3         **MS. LISS-RIORDAN:**  And respectfully, Your Honor, the

4     case law specifically says that an order compelling arbitration

5     is not appealable if the court enters a stay, but it is

6     appealable if the court enters a dismissal.  And the Supreme

7     Court has allowed that, and like I said, a recent case in the

8     Central District has allowed it also.  And I -- I can give you

9     the cite, if you give me one second.

10        **THE COURT:**  If it's a matter of the court's

11    discretion, then why should I do it?

12        **MS. LISS-RIORDAN:**  Well, first, I'm hoping that you

13    will agree with me on one of my other two arguments, but if you

14    disagree with me on the other two arguments, it's because a

15    serious issue is being raised here, which, as I just described,

16    I think needs further consideration potentially by an *en banc*

17    panel -- I mean -- I'm sorry -- potentially by the *en banc*

18    Ninth Circuit in reviewing --

19        **THE COURT:**  How would you describe the serious issue

20    that you are presenting?

21        **MS. LISS-RIORDAN:**  On the *Bickerstaff* argument?  The

22    serious issue is that we all know that the United States

23    Supreme Court has very drastically and seriously been limiting

24    ability of workers and other types of plaintiffs to band

25    together and bring class actions in court through the use of

1   arbitration clauses.  We all know that.

2      But those decisions are not unlimited.  It does not mean

3   that every single argument in favor of arbitration is going to

4   be granted.  It is extremely important -- it's a matter, I

5   would say, of great public importance and great importance to

6   the entire employment bar, consumer bar, as to whether or not

7   there really are almost no options left to bring class actions

8   in order to vindicate rights such as the rights that are

9   pressed in this lawsuit.

10      So there is a very serious issue that -- the whole point

11   of a class action -- the whole point of the --

12      **THE COURT:**  I just don't fully understand the argument

13   in the context of this case.

14      **MS. LISS-RIORDAN:**  Yes.

15      **THE COURT:**  In this case, your client on not one but

16   two occasions agreed to arbitration years ago.

17      **MS. LISS-RIORDAN:**  Yes.

18      **THE COURT:**  First in 2014 he signed the arbitration

19   agreement, and then in 2016 he reaffirms that by using the

20   mobile app.  So for the last four years, your client has been

21   subject to arbitration and did so voluntarily -- did so

22   voluntarily when he was given the option to opt out.  All

23   right.

24      So I don't quite understand why this case raises the

25   issues.  Your client is bound by arbitration, voluntarily

1    agreed to do so, and the whole notion that you could

2    potentially add someone who has opted out who would bind all

3    the people who have signed and been bound by an arbitration

4    agreement for years -- I don't understand that argument.

5         MS. LISS-RIORDAN:  Okay.  So if I can explain,

6    Your Honor, in the *Bickerstaff* case, the -- it was the exact

7    situation that was presented.  There was an individual who

8    rejected arbitration, and the Georgia Supreme Court decided --

9    and then the U.S. Supreme Court denied cert of the decision,

10   but the Georgia Supreme Court decided that the whole point of a

11   class action is to have someone who is interested in the issue

12   and is taking action on behalf of others who are not going to

13   act on their own behalf and that when the lead plaintiff --

14        THE COURT:  So why --

15        MS. LISS-RIORDAN:  -- rejected arbitration --

16        THE COURT:  -- why shouldn't that be Mr. Roussel who

17   you seek to add?  Why can't Mr. Roussel have his own case in

18   which he is acting on behalf of people similarly situated to

19   him in that they opted out of the agreement?

20        MS. LISS-RIORDAN:  So in the *Bickerstaff* case, the

21   plaintiff, who rejected arbitration, was deemed by the Court to

22   have done so on behalf of the class he sought to represent, but

23   not automatically.  He was not held to have bound all of those

24   class members.

25        What the Court said was that he could proceed with his

1   case, and if he ultimately was successful in obtaining class

2   certification, then the class would receive, in the ordinary

3   course, notice of the action and the opportunity to decide

4   whether to follow his lead in having rejected arbitration by

5   staying in the class, or alternatively if they would prefer not

6   to and if they would prefer making an intelligent decision to

7   stick with arbitration, they could opt out of the class.  So

8   that was the exact situation --

9         **THE COURT:**  In this case, however, there was a 30-day

10   opt-out period, which your client missed by four years.  And I

11   would not -- I would not find in this case that he could

12   retroactively opt out of a case, out of an arbitration

13   agreement, that he had not only signed four years ago, but had

14   obviously complied with over the course of four years.

15         **MS. LISS-RIORDAN:**  And that is exactly the situation

16   in the *Bickerstaff* case --

17         **THE COURT:**  I'm not going to follow *Bickerstaff*.

18         **MS. LISS-RIORDAN:**  I completely recognize that.

19         **THE COURT:**  I'm not persuaded by it at all.

20         **MS. LISS-RIORDAN:**  I understand.  I completely --

21         **THE COURT:**  Do you have any arguments based on any

22   reasoning other than *Bickerstaff*, because that's not going to

23   change my mind?

24         **MS. LISS-RIORDAN:**  Yes.  I absolutely agree this Court

25   must follow *Bickerstaff*.  I'm simply explaining why, because

1    you asked me why is there an issue that plaintiff should be

2    able to pursue further on appeal, and that goes to the Court's

3    discretion as to whether to dismiss or to stay if you disagree

4    with our arguments, opposing arbitration.

5          **THE COURT:**  Is your response then that your

6    *Bickerstaff*-related argument is all you have?

7          **MS. LISS-RIORDAN:**  Well, that's the first argument.

8    Now, I also have transportation worker and public injunction,

9    which I can turn to now if --

10         **THE COURT:**  Okay.  Why don't you do that because I'm

11   not going to be moved by *Bickerstaff*.

12         **MS. LISS-RIORDAN:**  I completely understand that.

13         So, Your Honor, the second argument is the transportation

14   worker exemption to the FAA.  That is Section 1 of the FAA.

15   And there are -- in order to fall under this exemption,

16   plaintiffs have to be subject to contracts of employment and be

17   engaged in the transportation of goods in interstate commerce.

18         So let me talk about those three pieces of this.

19         So first off, on the contract of employment, as I noted in

20   the briefs, there are two ways to go here.  There is the way

21   that the First Circuit went -- well, let me put that to the

22   side because we're in the Ninth Circuit.

23         What the Ninth Circuit said in the *Van Dusen* case is that

24   the court is required to make an antecedent determination as to

25   whether or not workers are employees and thus worked under

1    contracts of employment.  And so that's what the Ninth Circuit

2    said.

3        The First Circuit, which in the *Oliveira vs. New Prime*

4    case, a case that is being heard this coming term by the U.S.

5    Supreme Court, the First Circuit said that antecedent

6    determination doesn't even need to be made because both

7    employees and independent contractors qualify as operating

8    under contracts of employment.  There is no need to even get to

9    that question.  And the Supreme Court is going to be reviewing

10   that decision.

11       And so what I had posed, though, is that here in the Ninth

12   Circuit, the Ninth Circuit hasn't adopted that more liberal

13   framework that the First Circuit has, so there is no need to

14   wait to see what the Supreme Court says about the First

15   Circuit's methodology here.

16       In the Ninth Circuit, it would be incumbent on the Court

17   to make, as it was required to do in the *Van Dusen* case, this

18   preliminary antecedent determination as to whether the workers

19   are employees.

20       And what happened in the *Swift* case was the court did

21   that, essentially on a summary judgment standard.  There was

22   discovery.  There was summary judgment -- there was summary

23   judgment briefing.

24       And in this case, as we pointed out under the California

25   Supreme Court's recent decision of *Dynamex*, I really think

1    there can be no question that the plaintiffs are employees.

2    But that's all just part one of the transportation worker

3    exemption.

4         Part two of the transportation worker exemption is whether

5    or not --

6              THE COURT:  Excuse me.  Isn't the ultimate question in

7    the case whether or not -- I mean, this is a case about

8    misclassification; correct?

9              MS. LISS-RIORDAN:  Yes, it is.

10             THE COURT:  So you're asking the Court to make some

11   kind of *prima facie* determination that you've met the standards

12   and can prove your case --

13             MS. LISS-RIORDAN:  Yes, which --

14             THE COURT:  -- at the beginning of the case?

15             MS. LISS-RIORDAN:  Which is exactly what the Ninth

16   Circuit said the district court has to do in the *Van Dusen*

17   case, that's correct.

18             THE COURT:  All right.  But you're not asking for an

19   ultimate determination --

20             MS. LISS-RIORDAN:  No.  It's a preliminary -- it's a

21   preliminary determination.  They call it an antecedent

22   determination.  It's just a threshold issue.  It's not the

23   ultimate issue.

24             THE COURT:  Okay.

25             MS. LISS-RIORDAN:  So on -- the second question is as

1    to whether or not the drivers here, the plaintiffs here, are

2    engaged in transporting -- transportation work.  I think there

3    can be no question that they're engaged in transportation work.

4    That's what they do, is they drive.  They deliver food and

5    meals from restaurants to customers at their homes.  They're

6    clearly transportation workers.

7         Now, the defendant cites to various cases such as cases

8    that held that pizza delivery drivers, for instance, are not

9    transportation workers.  The difference with that kind of case

10   is that -- and the Courts have looked at a number of factors.

11   There is the *Lenz* case, which is an Eighth Circuit case, which

12   we've cited which sets forth a number of factors the courts are

13   to look at in determining whether or not a worker is a

14   transportation worker under this exemption.

15        But one of the factors you look at also is whether the

16   company as a whole is engaged in transportation.  So a pizza

17   delivery driver is working for a pizza restaurant, which

18   clearly is not a transportation company.  But the fact where

19   here you have drivers who are working for a company whose very

20   business is to provide transportation is a different story.

21   And so these drivers, I think it could not be denied, are

22   involved in transportation.  That's what they do.

23        And, in fact, the cases under the transportation worker

24   exemption have been so broad as to say that even workers who

25   are not themselves the ones doing the transportation but are

1    working for a transportation company would fall under the

2    exemption, such as managers or supervisors who don't even do

3    the driving themselves.  But here the plaintiffs are actual

4    drivers themselves.

5        Now, I think the third issue under the transportation

6    worker exemption is the most interesting.  So let me talk about

7    that.  And that is the question about whether the

8    transportation is in interstate commerce.

9        So what defense counsel just referred to is the question

10   about whether the drivers themselves are crossing state lines.

11   The case law is clear that the drivers themselves don't need to

12   be crossing state lines in order to qualify as being engaged in

13   transportation services and interstate commerce.

14       The question is whether what they're delivering crosses

15   state lines.  And there can be no doubt that food products that

16   are brought to restaurants and prepared in restaurants and then

17   delivered to customers, these food products come from all over

18   the country; all over the world, perhaps.

19       And also the case law as we've cited makes clear --

20            **THE COURT:**  Potentially.  Potentially.

21            **MS. LISS-RIORDAN:**  Well, there can be discovery, if

22   necessary, but I think it can really hardly be denied that

23   restaurants all throughout California are not solely preparing

24   and delivering food that was manufactured or grown in

25   California.

1    The case law makes clear that the -- not all -- not all

2    the products have to cross state lines, only some of them.   If

3    even some of them do, that still qualifies as interstate

4    commerce.

5    But here is the most interesting part of the issue.   The

6    issue is whether or not the journey of these food products in

7    interstate commerce -- whether the journey ends at the

8    restaurant because they are transformed into prepared meals

9    that are delivered to their -- to the customers, to their

10   homes.   And that's where it gets very interesting, and we've

11   cited a series of cases involving milk products.   For some

12   reason, this issue just came up a bunch in the milk industry.

13   And the courts actually looked at the question of how much

14   processing went into -- whether the delivery of these milk

15   goods were in interstate commerce came down to the question of

16   how much processing happened at that point from which they were

17   delivered so if -- in other words, if there was little -- if

18   there was little processing, then they were still continuing on

19   their interstate journey from wherever they came from to the

20   place where they were -- where they were delivered from in

21   state versus if there was a lot of processing, then the court

22   said well, then it looks like their interstate journey came to

23   a halt.

24   So what I would submit is that restaurants throughout

25   California for which these DoorDash drivers are delivering

1   their food -- there are different types, I think it can just be

2   understood, but we can develop a factual record, if necessary,

3   that these different foods are of the type, some of which are

4   processed -- they're fully cooked meals -- and some of which

5   are not.  There are soda -- sodas that come from out of state.

6   There are bags of chips that come from out of state and those

7   aren't processed at the restaurant.

8        And, again, it doesn't need to be all of the food products

9   that are interstate but even just some of them are interstate.

10  That qualifies as interstate commerce, and I've cited that case

11  for you as well in the briefing.

12       So now defense counsel relies on the -- a district court

13  decision in this court that rejected this argument.  I made

14  this argument to Judge Laporte in the *Levin vs. Caviar* case,

15  and she rejected the argument.  She essentially compared the

16  drivers to the pizza delivery drivers but, I would submit, did

17  not go into the level of analysis that I'm explaining to you,

18  and I don't think she was correct --

19       **THE COURT:**  How do you distinguish them from pizza

20  delivery drivers who are indeed delivering food, which is what

21  I think Dashers do; right?

22       **MS. LISS-RIORDAN:**  Right.  Okay.  Because if you look

23  at the *Lenz* case, for example, which sets forth the factors,

24  you don't have to make it on every factor.  There is sort of a

25  balancing that the courts do of these various factors.  And the

1   fact that the pizza delivery drivers worked for a company that

2   was clearly not a transportation company, it was a pizza

3   restaurant, whereas here we are talking about a company that

4   the very essence of the company is itself to be a

5   transportation company, so that is -- that is the distinction.

6   That's why just simply relying on these pizza delivery cases, I

7   submit, was not correct.

8        And in the *Levin vs. Caviar* case, I appealed that to the

9   Ninth Circuit.  The case then settled on a class-wide basis

10  before it could be heard so the appeal was withdrawn.

11       So I agree that there is another district court in this

12  court that has rejected the argument.  I submit that it did not

13  consider this argument as closely as I am trying to present to

14  you here.

15       And the same argument I'll note that I'm presenting here

16  is also pending in another case against DoorDash that I have

17  filed in the District of Massachusetts, and that case was

18  argued in May, and we're awaiting a decision from the court

19  there on the exact same issues that are here.

20       These are obviously serious issues, given the fact that

21  the Supreme Court has limited the ability of workers so

22  strongly from bringing class actions.  I think it is incumbent

23  on the courts to look very closely on these arguments that

24  could allow workers to band together so as to actually enforce

25  these wage law rights.

1        Now, if I could -- I could turn to my third argument,

2   unless you have any other further questions on the

3   transportation worker argument.

4              THE COURT:  No.

5              MS. LISS-RIORDAN:  So the third argument is the

6   argument that DoorDash cannot compel arbitration of plaintiff's

7   claim for an injunction in this case, which is essentially a

8   public injunction, an injunction of extreme importance to the

9   public.  And in the *McGill* case --

10             THE COURT:  How is it of extreme importance to anyone

11  other than your client and the putative class?

12             MS. LISS-RIORDAN:  It is -- I'll tell you exactly why.

13  The California Supreme Court made that loud and clear on

14  April 30th when it issued its recent decision in *Dynamex*.  In

15  an 82-page unanimous decision, the California Supreme Court

16  explained why proper classification of workers is of such

17  importance, not just to those workers themselves, but to the

18  public at large, and it spelled it out, and we've quoted it in

19  our brief.  That the court looked at the fact that when

20  companies misclassify their workers as independent contractors,

21  they not only deny those workers their rights under the Labor

22  Code and other employment laws, but they hurt complying

23  competitors, which makes it extremely difficult for companies

24  who are trying to comply with these laws to compete, and they

25  hurt the public, including the public government -- state

1     government, federal government, who are deprived of funds both

2     in the form of taxes that are placed on employment, but also

3     because workers who are deprived of these rights often are not

4     able to support themselves and have to rely on public

5     assistance.

6        So the California Supreme Court made loud and clear that

7     these are issues that are of public importance.  And what the

8     *McGill* case from the California Supreme Court said just last

9     year is that issues of public importance -- a plaintiff coming

10     into court seeking an injunction that is of public importance

11     cannot be compelled to arbitration where that relief could not

12     be obtained in arbitration.

13        **THE COURT:**  Why couldn't it be obtained in

14     arbitration?

15        **MS. LISS-RIORDAN:**  Because DoorDash's arbitration

16     clause is very specific that any claims brought in arbitration

17     cannot be on a class collective or representative basis.  I am

18     positive that DoorDash would argue in arbitration that that

19     phrase prevents a plaintiff, who is pursuing an arbitration,

20     from bringing a claim -- seeking relief that would affect

21     anyone other than himself.  And that's what *McGill* looked at.

22        **THE COURT:**  Do you have case authority that

23     establishes that a plaintiff seeking a public injunction is

24     essentially tantamount to a class representative or collective

25     action?

1        **MS. LISS-RIORDAN:**  Well, it's more like a

2    representative action.  It's similar to a PAGA case, and the

3    California Supreme Court and the Ninth Circuit have held that

4    PAGA claims cannot be compelled to arbitration.  Representative

5    claims have to be allowed to proceed and that is not preempted

6    by the FAA.

7        So this is a similar doctrine that the California Supreme

8    Court has established in *McGill*.

9        **THE COURT:**  So your argument is that a plaintiff

10   seeking a public injunction is essentially -- should be

11   compared to a plaintiff seeking to represent a PAGA class?

12       **MS. LISS-RIORDAN:**  Yes.  It's akin to a representative

13   action because the plaintiff is seeking an order prohibiting

14   the company from engaging in this conduct generally, not simply

15   to himself, but generally that the -- the wage laws, the Labor

16   Code must be complied with with respect to the workers at large

17   and not just himself.  And that's why it's akin to a

18   representative action.

19       And because DoorDash's arbitration agreement is so

20   specific that in arbitration, a worker can only bring an

21   individual claim, that that agreement would not allow seeking a

22   public injunction in arbitration.

23       **THE COURT:**  Okay.

24       **MS. LISS-RIORDAN:**  If DoorDash were to say otherwise

25   and say of course that claim could be brought in arbitration,

then I might pursue it in one of the arbitrations that I have
filed in the alternative, which, of course, does not in any way
show that the arbitration clause is enforceable simply because
some of my clients have attempted to avail themselves of
arbitration.

But if DoorDash were to state here on the record openly
that it would not try to impede in any way workers from
bringing public injunction claims in arbitration, then maybe
they can, but under the terms of the agreement, it seems pretty
clear that DoorDash will argue that they cannot.

**THE COURT:**  Okay.  All right.  Is that it?

**MS. LISS-RIORDAN:**  Unless the Court has any more
questions, I believe that's it.

**THE COURT:**  All right.  Response?

**MR. LIPSHULTZ:**  On the FAA Section 1 exemption, I
think the questions that opposing counsel described are
interesting; may have been interesting at one time, but the
U.S. Supreme Court has already rejected them in 2001.

The *Circuit City* decision by the U.S. Supreme Court
explains that the Section 1 exemption must be construed
narrowly and only to workers who are in a position akin to
railroad workers and shipmen, seamen.  And this court --

**THE COURT:**  What is your response to plaintiff's
counsel's argument with regard to the need for the Court to
consider the nature of the company as opposed to the individual

1    workers?

2          MR. LIPSHULTZ:  Well, again, as this Court explained

3    in the *Vargas* decision, quoting *Circuit City*, transportation

4    workers are, quote, "workers" -- this is a quote from *Circuit*

5    *City* -- "workers actually engaged in the movement of goods in

6    interstate commerce."

7          So, again, that has been rejected by the U.S. Supreme

8    Court.  The worker has to be engaged in moving goods in

9    interstate commerce.

10          Paragraph 3 of the plaintiff's Complaint makes clear that

11    he's not.  He's a worker in San Jose.

12          THE COURT:  So even if someone worked for a railway or

13    for FedEx or for a company for which there is no dispute it's a

14    transportation company, that person was a clerical worker and

15    not actually driving a truck, it wouldn't apply?

16          MR. LIPSHULTZ:  I think that's right.  The U.S.

17    Supreme Court hasn't ruled on that fact pattern necessarily,

18    and that fact pattern is obviously not presented here, but I

19    think that's correct.

20          And it's not just the pizza delivery case that has come

21    out the other way.  It's every case.  It's *Levin vs. Caviar*

22    that counsel argued was -- Caviar is a company just like

23    DoorDash, a technology company.

24          By the way, DoorDash is not a transportation company.

25    It's a technology company.  It operates a technology platform

1  that people use to move meals from restaurant to worker -- to

2  consumer.

3      **THE COURT:**  I don't believe there has been any

4  definitive ruling from a circuit on that.

5      **MR. LIPSHULTZ:**  No.  And Your Honor doesn't need to

6  reach those questions here.

7      The point is simply that the arguments counsel has been

8  making here today that she describes as interesting are on some

9  level theoretically interesting, but they have all been

10  unfortunately rejected by the U.S. Supreme Court.  The Eleventh

11  Circuit in the *Hill vs. Rent-A-Center* decision is another case

12  that rejected this argument.

13      And the cases that counsel points to in her brief to

14  support her argument are completely different cases.  The

15  primary case she relies on is this *Palcko* case from the Third

16  Circuit.  There the company was Airborne Express.  It was

17  literally a company whose business is to transport goods by air

18  internationally and interstate.

19      So they are just not on point with the case here.  Every

20  case on point has gone the other way.

21      On the public injunction question --

22      **MS. LISS-RIORDAN:**  May I just respond briefly before

23  he addresses public injunction?

24      **THE COURT:**  No.  Let him finish.  You did both issues;

25  he gets to do both issues.

1       **MR. LIPSHULTZ:**  On the public injunction question, the

2   rule that counsel refers to as -- the *McGill* case from the

3   California Supreme Court talks about cases in which courts --

4   companies have prevented public injunction claims from being

5   brought anywhere where you have waived your right to bring a

6   public injunction claim anywhere, and they have said that those

7   waivers may not comport with California public policy.

8       The rule that counsel is actually relying on which says

9   that you can't have an arbitration agreement forcing claim --

10  forcing these types of claims to arbitration is actually the

11  Broughton-Cruz Rule, and the Ninth Circuit actually rejected

12  that rule in the *Ferguson* case.  It said that that rule is

13  preempted by the FAA, which, of course, it is.

14      Any argument that you can't arbitrate any particular type

15  of claim is squarely preempted by the FAA.  The FAA insists, as

16  the Supreme Court has said many times, that you have to be able

17  to agree to arbitrate any type of claims that you wish on a

18  bilateral basis.  That's *Italian Colors*, it's *Concepcion*, it's

19  case after case after case, and *Epic Systems* just last year.

20      So these arguments again have been fairly rejected by the

21  U.S. Supreme Court.  And the notion that her client,

22  Mr. Magana, would have standing to pursue an injunction on

23  behalf of anyone other than himself is really something that

24  doesn't make a lot of sense to me, and I think we would have

25  serious problems with a standing argument in that regard.

```
 1          But, in any event, whether or not his public injunctive

 2    claim -- which, by the way, he doesn't have a public injunctive

 3    claim.  As Your Honor pointed out, he has a claim for

 4    injunctive relief only on behalf of a small group of people,

 5    namely, who do work on the DoorDash platform.  So it's not a

 6    public injunctive claim.

 7          But even if he did, whether or not --

 8              THE COURT:  It's not really a claim, is it?

 9          MR. LIPSHULTZ:  It's not a claim at all.  It's a form

10    of relief that is he is seeking -- by the way, it's not even in

11    the Complaint.  Counsel is trying to amend it into the

12    Complaint, which is another problem with it.

13              THE COURT:  It's not one of the five causes of

14    action --

15          MR. LIPSHULTZ:  No.

16          THE COURT:  -- which is why I don't quite understand

17    why we are referring to it as a claim.

18          Is it a form of relief that is sought in the prayer in the

19    Complaint?  I don't --

20          MR. LIPSHULTZ:  Not expressly in the original

21    Complaint.  In the proposed Amended Complaint, that I'm sure

22    we'll talk about in a few minutes, counsel tries to reframe the

23    relief sought as a public injunctive relief claim, even though

24    it's not.  It's only on behalf of, again, people like

25    Mr. Magana who have done work on the DoorDash platform.
```

1          So it's -- it's not a public injunctive relief claim, and

2      any --

3              **THE COURT:**  We are still talking about the Motion to

4      Arbitrate, which was filed in July, and there was no public

5      injunctive relief claim in the operative Complaint that was

6      filed when the motion was filed.

7              **MR. LIPSHULTZ:**  That's correct.

8              **THE COURT:**  So I'm not even sure why we're talking

9      about it.

10             **MR. LIPSHULTZ:**  That's correct.

11             **THE COURT:**  In any event, I have heard enough about

12     it.  We still have two other motions, and we're going to move

13     on.

14             **MS. LISS-RIORDAN:**  I can't respond very briefly?

15             **THE COURT:**  No.  It's their motion.  They get to have

16     the last word on it.  On your motions, you can have the last

17     word.

18         The next motion is the Motion for Leave to File an Amended

19     Complaint.  That's your motion.  You get to go first and last.

20             **MS. LISS-RIORDAN:**  Thank you, Your Honor.

21             **THE COURT:**  Is there anything you want to say?

22             **MS. LISS-RIORDAN:**  Yes, Your Honor.

23         So plaintiff filed this Motion to Amend the Complaint

24     just, I believe, one week after what would have been 21 days

25     since the Motion to Compel Arbitration was pending.

1          Courts routinely allow early amendment.  Courts often

2     allow amendments even much latter in a case.

3          Judge Chhabria, addressing the exact same situation just

4     last week, said that a Motion to Compel Arbitration is not a

5     responsive pleading, and thus a plaintiff was allowed to amend

6     a Complaint to add another plaintiff, even after that 21 days

7     had elapsed, and I submitted that as a Notice of Supplemental

8     Authority.

9          So --

10          **THE COURT:**  Well, DoorDash is -- let's -- wait.  We

11     jumped over the procedural problem.

12          The Statement of Supplemental Authority you filed,

13     purportedly pursuant to local 7-3(d), which is the only rule

14     that allows a filing after the reply brief has been filed --

15     and you filed that, and I believe you relied upon two cases,

16     one of which at least had been filed and available for citing

17     when you filed your reply brief.

18          But additionally, you added argument.  I don't quite

19     understand why you believe that's appropriate, given that the

20     rule says you simply put the court on notice that there has

21     been this new decision and you added argument and an older

22     decision.

23          Why is it that you think that your supplemental filing

24     shouldn't be stricken?

25          **MS. LISS-RIORDAN:**  I apologize, Your Honor.  Some

1   courts have allowed brief argument with a supplemental --

2   Notice of Supplemental Authority.  I don't have DoorDash's

3   Notice of Supplemental Authority before me from yesterday, but

4   I had thought that there was some brief argument contained in

5   it as well.

6       I defer to what -- if Your Honor -- if Your Honor is going

7   to strike the notice, I would still ask that the Court take

8   judicial notice of Judge Chhabria's order from September 7th.

9       **THE COURT:**  The supplemental filing is stricken, but

10  you can certainly argue the import of Judge Chhabria's

11  decision, if you wish.

12      **MS. LISS-RIORDAN:**  Okay.  Thank you, Your Honor.

13      So in the *Lawson vs. Deliv, Inc*. case, 18-3632,

14  Judge Chhabria was faced with the exact same situation we have

15  here in which a Complaint was filed, there was a Motion to

16  Compel Arbitration, and then plaintiff filed a Motion to Amend

17  the Complaint to add an additional plaintiff and make other

18  small changes to the Complaint, and Judge Chhabria said that it

19  was not necessary to file a Motion to Amend because an Amended

20  Complaint could be filed as a right because a Motion to Dismiss

21  is not a responsive pleading within the meaning of the rule,

22  and he cited Ninth Circuit authority for that proposition.

23      So I believe there are multiple -- there is really no

24  reason for the Court not to allow this early amendment.  There

25  are multiple reasons to allow it.  The case is in its infancy.

1    Mr. Roussel, who wishes to join the case as a named plaintiff,

2    he didn't even agree to arbitration, so there is no question

3    that he is not going to have to arbitrate his claim because he

4    expressly opted out of the arbitration clause.

5        So I would submit that the Court should allow the

6    amendment.  Even if the Court rejects all of the other

7    arguments that I'm making, he will be able to proceed before

8    this Court.

9        The Motion to Amend was filed --

10           **THE COURT:**  I don't quite understand.  He is not in

11   the same class.  He opted out of the arbitration agreement.

12   Your current client opted into it.  I mean, he signed it and

13   agreed to it.  Why should they be in the same class?

14       There's some dicta, at least, in the case yesterday and

15   there certainly are other cases that have been brought to my

16   attention which deal with the inadequacy of -- or the

17   inappropriateness of those two categories of plaintiffs

18   belonging in the same class.

19       Why isn't it -- and moreover, given that I'm going to

20   decide the arbitration motion first since it was filed first,

21   this case could very well be in a stay status or it could be

22   dismissed.  Why wouldn't it be futile to add him to a case that

23   I'm either staying or dismissing?

24           **MS. LISS-RIORDAN:**  Well, because, Your Honor, first of

25   all, it's premature to consider a class certification and

1   who -- who would be an adequate representative where this is

2   simply a Motion to Amend at the outset of a case.

3       Second of all, there could very well be different

4   subclasses, people who did not opt out of the arbitration

5   agreement and people who did.

6       The mere fact that our current plaintiff, Mr. Magana, did

7   not opt out of the arbitration agreement is not a reason why

8   someone who has the exact same claims against the exact same

9   company shouldn't be allowed to be amended into a Complaint at

10  the very beginning, before discovery has begun.

11      The Motion to File the Amended Complaint was filed well

12  before we got here before you at this initial hearing.  Courts,

13  as we've noted, have routinely allowed Motions to Amend --

14      **THE COURT:**  So if I grant the Motion to Compel

15  Arbitration and stay the case, what's the status of Mr. Roussel

16  if I also permit him to be added in?

17      **MS. LISS-RIORDAN:**  Well, his claims wouldn't be able

18  to be stayed because he is not bound by any arbitration

19  agreement so he should be able to proceed with his claims,

20  regardless of what you do with Mr. Magana.  And --

21      **THE COURT:**  So --

22      **MS. LISS-RIORDAN:**  And you don't know -- we don't know

23  yet whether or not there are enough drivers who opted out so

24  that there could even potentially be a class of drivers who,

25  like Mr. Roussel, opted out of arbitration.  We haven't done

1  discovery yet.  We simply don't know.

2      This is just a Motion to Amend.  I feel like defense

3  counsel is trying to jump ahead several steps here to make

4  substantive arguments about whether a class would be

5  appropriate, who would be a class representative.

6      Courts frequently allow -- routinely allow early

7  amendments, even late amendments after -- I have cited cases

8  where courts have allowed amendments of new plaintiffs even

9  years after the case was filed.  For example, one of the cases

10 before Judge Chen in the *Uber* litigation, the *Yucesoy vs. Uber*

11 just this spring, Judge Chen allowed amendment of additional

12 lead plaintiffs four years after the case was started because

13 there were additional arguments to be made with respect to

14 them.

15     And in cases in which a lead plaintiff may, for some

16 reason, be deemed not adequate, courts routinely allow the

17 amendment of additional plaintiffs in who might be able to

18 address those arguments.

19         **THE COURT:**  Let me get back to what you said.  If,

20 indeed, the Motion to Compel Arbitration is granted and if I

21 determine that the action should be stayed, you said that the

22 claim -- if Mr. Roussel is added to the case, that the case

23 couldn't be stayed as to him.

24         **MS. LISS-RIORDAN:**  Correct.

25         **THE COURT:**  Okay.  What is that based on?

1          **MS. LISS-RIORDAN:**  Because there's absolutely no basis

2     for him to be compelled to arbitration so there is no reason

3     for -- there is no reason for his claims to be stayed, even if

4     the Court were to stay claims -- claims of other plaintiffs who

5     were bound by arbitration.  There is simply no basis that --

6     there is no reason why he can't be allowed to proceed with his

7     claims.

8          **THE COURT:**  So you think, then -- you would ask that

9     the Court sort of bifurcate the case and separate out the

10    plaintiffs for which Motions to Compel have been filed but yet

11    go forward with the others?

12         **MS. LISS-RIORDAN:**  Yes.  That happens all the time.

13         **THE COURT:**  Is that --

14         **MS. LISS-RIORDAN:**  Yes.

15         **THE COURT:**  Is that how you proceed --

16         **MS. LISS-RIORDAN:**  Yes.  Yes.  Of course, we would

17    ask, as I argued earlier, that if you disagree with all of the

18    arguments that I have made with respect to Mr. Magana, that you

19    dismiss him so that we can pursue these issues on appeal.

20         I think, if nothing else, this argument has shown that

21    there are arguments here.  I -- I understand the Court may or

22    may not agree with the arguments that I'm presenting, but I

23    would submit that these are important arguments that should be

24    allowed to be addressed, if necessary, on appeal and that would

25    be -- that would be the way to get there, and the Supreme Court

1    has allowed that, has explicitly noted that when cases are

2    dismissed rather than stayed, they can be appealed.

3        And Judge Bernal in the *Gonzalez vs. Coverall* case

4    explicitly granted that request to dismiss a case after he had

5    determined that he must compel arbitration when presented with

6    the same situation.  So --

7        **THE COURT:**  All right.  You need to wrap it up.  I

8    have another matter that I need a lot --

9        **MS. LISS-RIORDAN:**  We haven't addressed yet my

10   additional motion.  Are we --

11       **THE COURT:**  Are you finished with the amendment issue?

12       **MS. LISS-RIORDAN:**  I believe I'm finished with the

13   amendment issue, yes.

14       **THE COURT:**  Brief response?

15       **MR. LIPSHULTZ:**  Brief response.

16       This whole plan just makes no sense, Your Honor.

17   Mr. Magana has a claim that needs to go to arbitration.  That

18   should be the end of the case.  That should be stayed pending

19   the arbitration.  That's what the FAA requires, 9 U.S.C. 3, the

20   case shall be stayed.

21       And so how can it be that another plaintiff can come in

22   and try to litigate the same case while the case is stayed

23   pending arbitration?  If you look at the Rule 15 motion that

24   counsel filed and the proposed Amended Complaint --

25       **THE COURT:**  Are you suggesting that perhaps this is

1    sort of strategy to avoid a stay?

2             MR. LIPSHULTZ:  I would never suggest that,

3    Your Honor.  But I do -- I do think it's worth considering

4    whether it is.  I mean, the -- the proposed Amended Complaint

5    that is added -- that is attached to the Rule 15 motion is

6    completely improper.  It has both Mr. Magana and Mr. Roussel in

7    it.  It asserts a class action on behalf of Mr. Roussel, on

8    behalf of everyone, even though we know that most of the

9    drivers are subject to arbitration agreements.

10        The Ninth Circuit's decision from yesterday again rejects

11   this attempt to bring a class action on behalf of putative

12   class members who are bound by arbitration agreements.  It

13   can't happen.

14        And so the Complaint that she's proposing to amend is

15   completely futile and improper, and if Mr. Roussel has

16   individual claims that he wishes to pursue because he opted out

17   of arbitration, if he wants to pursue them in court --

18             THE COURT:  You are talking way too fast.

19             MR. LIPSHULTZ:  Sorry, Your Honor.  So much to say.

20        If Mr. Roussel has individual claims that he wants to

21   bring in court because he opted out of his arbitration

22   agreement, he can bring his own case.  And it's certainly

23   questionable whether the federal -- whether a federal court

24   would have jurisdiction over an individual claim by Mr. Roussel

25   against DoorDash under the California Labor Code.

1   And so allowing her to amend in Mr. Roussel and somehow

2   proceed with his own individual claims while the rest of the

3   case is stayed pending arbitration of Mr. Magana's claims makes

4   absolutely no sense, Your Honor.

5   **THE COURT:**  Okay.  All right.

6   Brief response?

7   **MS. LISS-RIORDAN:**  Yes.  Your Honor.

8   So, first of all, I just want to cite for the Court Ninth

9   Circuit authority, *Sparling vs. Hoffman Construction Company*,

10   864 F.2d 635, Ninth Circuit, 1988, said: "Courts have

11   discretion under 9 U.S.C. Section 3 to dismiss or stay claims

12   that are subject to an arbitration agreement."

13   So --

14   **MR. LIPSHULTZ:**  If there is not -- I'm sorry.

15   **THE COURT:**  Hold on.  Do not interrupt.

16   Go ahead.

17   **MS. LISS-RIORDAN:**  Okay.  And so, again, with respect

18   to Mr. Roussel, it is completely premature for DoorDash just to

19   be saying there is no way he can get a class certified here,

20   and, again, we don't even know.  We haven't done any discovery.

21   We don't know how many DoorDash's drivers opted out of

22   arbitration or might have some defenses to arbitration that

23   even he or Mr.-- I'm sorry -- that Mr. Magana doesn't have.

24   It's just premature for a court to determine it at this early

25   juncture.

1      And I just want to cite a case that was decided in the

2  District of Connecticut, I believe, 2011.  *D'Antuono vs. V & C*

3  *Holdings*.  It was a strip club case involving a strip club

4  called The Gold Club.  There was a plaintiff who was not bound

5  by arbitration because the defendant couldn't find an

6  arbitration agreement for her.  They claimed that everyone had

7  signed arbitration agreements, but they weren't able to produce

8  an arbitration agreement for her.

9      The district court there held that because there may be

10  individual questions about whether various individuals who had

11  worked there were subject to arbitration or not and the burden

12  was on the defendant to prove that everyone who it said was

13  bound by an arbitration agreement actually had an arbitration

14  agreement, the court allowed the case to go forward and there

15  could be proceedings for those people who might not have

16  arbitration agreements or might have their own defenses to

17  arbitration agreements to join the case.

18      But in this case, this is completely putting the cart

19  before the horse because, again, we have no idea at this

20  juncture how many people rejected arbitration.  How many people

21  is DoorDash not going to be able to locate an arbitration

22  agreement for?  They want to prevent the early amendment,

23  extremely early amendment of a Complaint, just based on their

24  statement now that no class will be able to be certified, but

25  it would be improper for the Court to determine whether a class

1    could be certified at this juncture, and we haven't even

2    brought a class certification motion yet.

3        And I also just wanted to briefly note that our Motion to

4    Amend also seeks to add the single word "public" to the request

5    for relief for an injunction.  The original Complaint, while it

6    did seek an injunction and for the reasons I've described, it

7    is an injunction of a public nature.  In the Motion to Amend,

8    we simply requested to add that single word to clarify that it

9    would be of a public nature.

10        So, again, there is -- there is no reason I see that a

11    court could not allow an amendment to a Complaint one week

12    after DoorDash claims that it could have been allowed, but

13    under Judge Chhabria's reasoning, could be allowed without my

14    even having to have brought this motion.

15        So I think that's it on the Motion to Amend.

16        **THE COURT:**  Well, you don't get to take advantage of

17    Judge Chhabria's theory because if that were indeed the case,

18    you would have just filed your motion.  If you didn't think

19    that you needed leave, why did you ask for leave?

20        **MS. LISS-RIORDAN:**  Well, because I thought that I

21    needed it, but then later Judge Chhabria said no, you don't

22    actually need it, so I could attempt to just file it now.

23        **THE COURT:**  Well, if his procedures were binding on

24    me, then, yes, but they're not.  I think you do need it.  You

25    do need leave because you sought leave and because you're

1    beyond the deadline, and I have no need to rule on that

2    particular issue.

3        You filed a Motion for Leave, you've cited the standard.

4    It's been opposed.  I'm going to determine that.

5        All right.  Let's move on to the last one.  Each side gets

6    three minutes.  I've heard enough this morning.  And that's the

7    Motion for a Protective Order.

8            **MS. LISS-RIORDAN:**  Yes.

9            **THE COURT:**  Anything you want to add to your papers or

10   anything you want to emphasize?

11           **MS. LISS-RIORDAN:**  I -- I want to emphasize that the

12   issue that is being presented here is an extremely important

13   one.

14           **THE COURT:**  Aren't they all?  I mean, that's what you

15   have said this morning.

16           **MS. LISS-RIORDAN:**  They are.  And this one no less

17   than any of the others.

18       As you can see, this -- there is an enormously heated

19   debate that is going on right now in this state regarding the

20   issue of how to determine which workers are properly classified

21   as employees and which are properly classified as independent

22   contractors.

23       What DoorDash has done through its action is trying to

24   influence its workers, I submit, its employees, to take

25   political action to advance DoorDash's view of the matter and

1    ask -- and encourage and support its employees to lobby the

2    legislature on its behalf in a way that is against their

3    interests in this case with them not even having notice of the

4    fact that this case has been filed and that taking such action

5    would impede their ability to pursue or have damages recovered

6    on their behalf.

7        And now I know DoorDash is going to make all these

8    arguments and has made all these arguments in opposition that

9    there can be no class action here and so this is all just moot,

10   but the point of it is that there are serious arguments that

11   are being raised, and even if Your Honor disagrees with me on

12   everything I have said, even if you compel arbitration, this is

13   an issue that can be brought to the fore eventually.  Even if

14   Mr. Magana has to go to arbitration, even if the Court were to

15   reject my arguments and stay this case and order Mr. Magana to

16   arbitration, he could then proceed to arbitration, and then the

17   stay could be lifted, at which time he could proceed with his

18   arguments, perhaps on appeal, that this case should have been

19   allowed to proceed as a class action.

20       But while that is all happening, what DoorDash is trying

21   to do is undermine the putative classes' rights to even have

22   the claims that have been brought on their behalf in this case

23   by trying to get them to lobby the legislature to undo the case

24   law that protects them in this case and without even telling

25   themselves -- and as we've cited in our papers, there is

1    actually a California statute that prohibits employers from

2    attempting to influence their employees' political activities,

3    and that's not limited to partisan political activities.

4    Lobbying the legislature is the type of political activity that

5    employers cannot direct or oversee or encourage or influence

6    their workers.

7         And we're not in any way saying that DoorDash can't take

8    its views to the legislature directly.  We're not trying to

9    interfere in any way with DoorDash's lobbying activities, but

10   it violates California law to allow DoorDash to influence its

11   own employees with respect to political activity.

12        And the reason this Court has --

13             THE COURT:  And what --

14        MS. LISS-RIORDAN:  -- jurisdiction under Rule 23(d) --

15             THE COURT:  Excuse me.

16        MS. LISS-RIORDAN:  Yes.

17             THE COURT:  What California law is violated?

18        MS. LISS-RIORDAN:  Yes.  This is cited in our reply

19   brief, which is at --

20             THE COURT:  Are you talking about the Labor Code

21   sections, 1101 and 1102?

22        MS. LISS-RIORDAN:  Yes.  Yes.

23             THE COURT:  And those claims aren't pled.

24        MS. LISS-RIORDAN:  Well, they're the basis, though,

25   for our Rule 23(d) motion.  I don't -- the fact that California

1    law prohibits this does not require that to be pled in the

2    Complaint.

3        When we filed the Complaint, we didn't know that DoorDash

4    was going to do that.  How could it possibly have been in the

5    initial Complaint?

6        When courts hear Rule 23(d) motions, it's always because

7    something happens while the case is ongoing.  It's not

8    something that is in the Complaint.

9        The Rule 23(d) orders that you see are where defendants

10   have communications with class members that may influence their

11   rights in the case.  Those are never pled in the Complaint, nor

12   could they be.

13           THE COURT:  Okay.  All right.

14       This is something you brought up in your reply brief so I

15   will want to hear from the defendants because you didn't --

16   this was not a basis for your -- not a basis that you relied

17   upon in your --

18           MS. LISS-RIORDAN:  Right, right.  Which is why --

19           THE COURT:  Please, let me get my question out.

20           MS. LISS-RIORDAN:  Yes.

21           THE COURT:  I need you to articulate exactly what the

22   basis of the 23(d) request is.  Is it based upon the so-called

23   notice that was contained in the email being confusing,

24   misleading, or somehow solicitous in a way it isn't permitted

25   to be or coercive?  What exactly is the claim?  It's a little

1     hard to tell because your theory seems to have changed between

2     your moving papers and your reply papers.

3          **MS. LISS-RIORDAN:**  Okay.  In the reply papers, we

4     added an additional argument, and by agreement of the parties,

5     we added this agreement -- we added this argument, and we

6     specifically stipulated to DoorDash filing a surreply so that

7     it could respond.  So I have both arguments.

8          **THE COURT:**  So does the reply argument supersede the

9     moving papers argument --

10         **MS. LISS-RIORDAN:**  It adds to them.  It adds to them.

11    I have reiterated the Rule 23 --

12         **THE COURT:**  Articulate to me, then, what the basis of

13    this request is so that I understand it.

14         **MS. LISS-RIORDAN:**  Okay.  So there are two bases of

15    the request.  There is Rule 23(d) and the case law that we have

16    cited in that the communications were -- they were misleading.

17    They did not provide complete information.

18         The Rule 23(d) cases in which courts have enjoined

19    defendants from communicating with class members -- for

20    example, the *County of Santa Clara* case and others -- have

21    found that when there are communications with putative class

22    members that would affect their rights in the action and they

23    don't provide information such as the fact -- what claims have

24    been brought on their behalf, what the legal theories are, how

25    to contact plaintiff's counsel if they have any questions about

1    their rights, those are considered by the courts to be

2    misleading communications, and corrective notice has been

3    ordered so that putative class members would understand the

4    other side of the story.

5         The fact that --

6              **THE COURT:**  What's the other ground?

7              **MS. LISS-RIORDAN:**  And the other ground is the

8    California Labor Code section cited in our reply brief that

9    prohibits employers from influencing their employees' political

10   activities, which is what this -- which is what this is, and

11   it's a further ground why under Rule 23(d), the Court has the

12   power to -- to enjoin this and to issue --

13             **THE COURT:**  All right.  I understand.  Thank you.

14        She has taken more time.  I will give you three minutes.

15             **MR. LIPSHULTZ:**  Thank you, Your Honor.

16        It's very simple.  First of all, if the Court compels

17   arbitration, there is no class action here so there is no basis

18   for a Rule 23(d) motion.  The whole issue is moot.

19        Second, even if there were a basis for a 23(d) motion in

20   terms of there being a viable class action here, which there is

21   not, then plaintiff hasn't even attempted to satisfy the *Gulf*

22   *Oil* standard.  There is no evidence in the record of confusion

23   or anything that is misleading.

24        23(d) orders are very serious orders that, as acknowledged

25   by the Supreme Court, necessarily violate somebody's First

1    Amendment right to free speech.  They can't be entered on the

2    basis of counsel's say-so that something is misleading.

3        Courts hear evidence; courts have hearings.  There is

4    extensive evidence presented in these types of cases where

5    courts decide whether a statement was misleading or coercive in

6    a manner that affects the litigation, and that's the other

7    problem here, is encouraging -- counsel started her argument by

8    explaining that there is a public policy debate going on in

9    this state right now about how to classify workers.  Exactly,

10   Your Honor.  DoorDash has a right to participate in that public

11   policy debate and a right to try to persuade other people that

12   it is correct on that issue.  That's how democracy works.  That

13   is the whole premise of the First Amendment.

14       If counsel doesn't like what DoorDash said about trying to

15   change the law, the way to solve that problem is to provide the

16   alternative viewpoint.  It's not to stop DoorDash from

17   speaking.  That is core First Amendment -- black letter First

18   Amendment law.

19       So the whole motion is completely unfounded.  And really

20   Labor Code Sections 1101 and 1102 -- the fact that counsel

21   relies on those in her reply brief, just read those sections,

22   Your Honor.  They have nothing to do with the conduct at issue

23   here.

24       The California -- the Northern District of California

25   explained with respect to Section 01 that courts

1   traditionally -- this is a quote from the *Smedley* case,

2   820 F. Supp 1227, 1230, Note 3:

3        "Courts have traditionally interpreted the statute,

4   Section 1101, as being intended to defend employees engaged in

5   traditional political activity from reprisal by their

6   employer."

7        There is no allegation here that DoorDash even -- first of

8   all, they are not an employer, but even if they were an

9   employer, there is no allegation that DoorDash is punishing

10  people for their political briefs.  DoorDash is trying to

11  convince people to agree with DoorDash on an issue of public

12  importance.  That's perfectly permissible and has nothing to do

13  with Rule 23(d), and the motion should be denied.

14        **THE COURT:**  Thank you.  The matter is submitted.  I

15  have heard enough.

16               (Proceedings adjourned at 10:03 a.m.)

1

2

3                    CERTIFICATE OF REPORTER

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   Thursday, September 27, 2018

8

9    _Pamela Batalo Hebel_

10   _____
     Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
11   U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25