UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MANUEL MAGANA,

    Plaintiff,

    v.

DOORDASH, INC.,

    Defendant.

Case No. 18-cv-03395-PJH

**ORDER COMPELLING ARBITRATION, STAYING ACTION, AND DENYING MOTION FOR PROTECTIVE ORDER AND CORRECTIVE NOTICE**

Re: Dkt. Nos. 18, 24, 31

DoorDash Inc.'s ("DoorDash") motion to compel arbitration and plaintiff's motions for a protective order and for leave to file an amended complaint came on for hearing before this court on September 26, 2018. Plaintiff appeared through his counsel, Shannon Liss-Riordan. Defendant appeared through its counsel, Joshua Lipshutz and Theane Evangelis. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

**BACKGROUND**

On May 8, 2018, plaintiff Manuel Magana filed a putative class action in California Superior Court, San Francisco County against defendant DoorDash, contending that DoorDash misclassified him and other delivery drivers as independent contractors rather than employees. Compl., Dkt. 1-2, Ex. C. The complaint asserted claims for (1) failure to reimburse for business expenses (Cal. Lab. Code § 2802); (2) minimum wage (Cal. Lab. Code §§ 1194, 1197); (3) willful misclassification (Cal. Lab. Code § 226.8); (4) inaccurate pay statements (Cal. Lab. Code § 226(a)); and (5) unlawful business practices under the

UCL (Cal. Bus. & Prof. Code §§ 17200, et seq.). Id. On June 8, 2018, DoorDash removed the action to this court. Dkt. 1.

DoorDash styles itself as a technology company that facilitates food delivery through its online platform. The platform connects customers, restaurants, and delivery drivers (DoorDash delivery drivers are referred to as "drivers" herein).

Magana began working as a DoorDash delivery driver in May 2014 and continues to make deliveries for DoorDash in the San Jose, California, area. Compl. ¶¶ 3, 11. Magana likely signed an agreement with DoorDash (referred to herein as the "Arbitration Agreement" or the "Agreement," a copy of which has been filed with the court at Dkt. 18-1 ("Tang Decl."), Ex. A, although the Agreement covers more than arbitration terms) when he first signed up to create a DoorDash account in 2014. Magana again entered into the Agreement on September 6, 2016. Tang Decl. ¶¶ 5–10 & Ex. B.[1]

The first page of the Agreement advised drivers of the arbitration provisions, as well as the right to opt out of those provisions. Agreement at 1. Section XI of the Agreement is entitled "MUTUAL ARBITRATION PROVISION." Id. § XI. The Arbitration Agreement made clear that "CONTRACTOR and DOORDASH mutually agree to resolve any justiciable disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court." Id. § XI.1.

The Arbitration Agreement also contains a class-action waiver provision providing that DoorDash and the contractor "both waive their right to have any dispute or claim brought, heard or arbitrated as, or to participate in, a class action, collective action and/or representative action, and an arbitrator shall not have any authority to hear or arbitrate any class, collective or representative action." Id. § XI.3.

The Arbitration Agreement provides that it is governed by the Federal Arbitration Act (9 U.S.C. §§ 1–16) ("FAA") and applies to "any and all claims arising out of or relating to this Agreement, CONTRACTOR's classification as an independent contractor,

---

[1] Magana does not dispute that he entered into the Arbitration Agreement.

2

CONTRACTOR's provision of Contracted Services to consumers, the payments received by CONTRACTOR for providing services to consumers, . . . and all other aspects of CONTRACTOR's relationship with DOORDASH, past, present or future, whether arising under federal, state or local statutory and/or common law, including without limitation . . . state and local wage and hour laws, state and local statutes or regulations addressing the same or similar subject matters, and all other federal, state or local claims arising out of or relating to CONTRACTOR's relationship or the termination of that relationship with DOORDASH." Id. § XI.1.

The arbitration provision is not mandatory. Each driver has a right to opt out of the arbitration provision within 30 days. Id. § XI.8. In order to opt out, the driver "must notify DOORDASH of CONTRACTOR's intention to opt out by sending an email to dasheroptout@doordash.com stating CONTRACTOR's intention to opt out. In order to be effective, CONTRACTOR's opt out notice must be provided within 30 days of the effective date of this Agreement." Id. Although Magana had the right to opt out of the Arbitration Agreement within 30 days, he did not do so. Tang Decl. ¶ 12.

On May 6, 2018, driver Jared Roussel opted out of DoorDash's arbitration agreement. Dkt. 32-1, Exs. J–K. Roussel allegedly began working as a delivery driver for DoorDash in May 2018. Dkt. 31-1 ¶ 4.

On July 12, 2018, DoorDash filed a motion to compel arbitration, asserting that Magana must bring his claims in individual arbitration. Dkt. 18.

On August 2, 2018, DoorDash sent an email communication to its drivers in California with the subject line "Speak Up for Your Independence." See Dkt. 24-1, Ex. A. The communication discussed a petition and message to the California legislature concerning a recent California Supreme Court case, Dynamex Operations W. v. Superior Court, 4 Cal. 5th 903 (2018), although the case was not mentioned by name. Id. The email stated that "DoorDash support[s] a legislative solution" to "a recent court decision" that affected "who can qualify as in independent contractor." Id. The email states that "If you agree, we ask you to join other independent contractors and tell your legislator . . . .

3

1  by signing a letter to your state legislators." Id. The email referred drivers to a webpage
2  that facilitated sending a pre-drafted email (that could be edited) to a California legislator
3  asking for legislation that would "suspend" a "recent California Supreme Court decision"
4  and "embrace the modern workforce." Dkt. 24-1 ¶¶ 3–5. DoorDash's email did not
5  include information about this action.

6  On August 3, 2018, plaintiff filed a motion for a protective order asking the court to
7  enjoin DoorDash from communicating with its drivers about "issues that could affect their
8  rights in this case" and to order a corrective notice be issued to DoorDash drivers in
9  California informing them of this case, and how the Dynamex decision may help them.
10 Dkt. 24 at 5.

11 On August 9, 2018, Magana moved to amend his complaint to add Jared Roussel
12 as a plaintiff. Dkt. 31.

## DISCUSSION

A number of Magana's arguments rely on his position that drivers who agreed to binding arbitration may now be "deemed" to have opted out of arbitration so long as a single driver opted out of arbitration, and so long as that driver is a named plaintiff in a putative class action. See generally Dkt. 32; Dkt. 31. Magana seeks to add Jared Roussel, who allegedly opted out of the arbitration provision of the Agreement, as a named plaintiff in this action for that reason. Dkt. 31. The court first addresses this novel legal argument, as it underlies many of Magana's arguments with respect to the pending motions.

Magana's argument in support of this unintuitive proposition relies on a single case from the Georgia Supreme Court, Bickerstaff v. Suntrust Bank, 299 Ga. 459 (2016). But that case does not support his position for at least two reasons.

First, the Ninth Circuit recently rejected a nearly-identical argument similarly based on Bickerstaff:

> The first reason is that even if the arbitration agreements would otherwise be enforceable, Plaintiffs argue they are irrelevant here because the lead plaintiffs in O'Connor

4

constructively opted out of arbitration on behalf of the entire class. The sole authority offered by Plaintiffs for this proposition is a Georgia Supreme Court decision, Bickerstaff v. Suntrust Bank, 299 Ga. 459, 788 S.E.2d 787 (2016). The argument is unpersuasive for multiple reasons. Nothing gave the O'Connor lead plaintiffs the authority to take that action on behalf of and binding other drivers. Nor did Bickerstaff hold that individuals in the lead plaintiffs' position had the authority to make such an election for others. Perhaps more importantly, Plaintiffs provide no federal case law that has relied on Bickerstaff, nor could they. That decision rested exclusively on state law grounds and did not discuss the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2.

O'Connor v. Uber Techs., Inc., No. 14-16078, 2018 WL 4568553, at *4 (9th Cir. Sept. 25, 2018). As the Ninth Circuit noted, Bickerstaff was based on Georgia's state contract law and the state's class action statutes, neither of which are applicable here.[2]

Second, Bickerstaff held only that filing the class complaint "tolled the required time period for giving notice" of putative class members' decisions to opt out of the class "until a [class] certification decision is made[.]" Bickerstaff, 299 Ga. at 469. Because the decision tolled the right to opt out starting the day the complaint was filed, it could not allow putative class members to opt out whose opportunity to do so had already expired by the time the complaint was filed. Id. ("Any member of the certified class who remains and does not opt out of the class will be deemed to have brought suit at the same time Bickerstaff's complaint was filed, which was within the deadline for rejecting arbitration for . . . the class Bickerstaff seeks to represent."). Even if the Georgia Supreme Court's decision under Georgia state law to alter contractual deadlines to opt out of arbitration applied to the Agreement, the facts are materially different for Magana. Magana does not allege that he filed his complaint within the 30-day period during which he was permitted to opt out of arbitration. Nor does he argue that Roussel filed a complaint during Magana's opt-out period. Because Magana was unable to opt out when the complaint was filed, Magana would not benefit from the tolling period that the logic of Bickerstaff, if

---

[2] Plaintiff filed a response to defendant's statement of recent decision, in which he advanced arguments addressing O'Connor. Dkt. 47. This court's local rules do not allow such a filing. As such, and for the reasons stated at the hearing, plaintiff's filing at Docket Number 47 is STRICKEN from the record.

1 applied, would support.

## A. DoorDash's Motion to Compel Arbitration

"The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 236 (2012).

The "first principle" that underlies the U.S. Supreme Court's arbitration decisions is that "[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." Granite Rock Co. v. Int'l B'hd of Teamsters, 561 U.S. 287, 299 (2010) (internal quotation marks and citations omitted); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Thus, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." Granite Rock, 561 U.S. at 297.

Under the FAA, any party bound to an arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. §§ 3–4; see also Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004); Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001). The FAA requires the court to compel arbitration of issues covered by the arbitration agreement. Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 218 (1985).

In ruling on a motion to compel arbitration under the FAA, the court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000); Lifescan., 363 F.3d at 1012. If the answers are yes, the court must enforce the agreement. Id.

The FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

6

contract." 9 U.S.C. § 2. Thus, state contract defenses may be applied to invalidate arbitration clauses if those defenses apply to contracts generally. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996); see also Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (state law defense, such as unconscionability, that applies to contracts generally may also invalidate an arbitration agreement); Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68 (2010).

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). Nevertheless, a motion to compel arbitration should be denied if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 650 (1986).

Plaintiff argues that defendant's motion to compel should be denied for two reasons. First, plaintiff argues that the FAA does not apply to the Arbitration Agreement because it is exempt from the FAA's coverage under the transportation-worker exemption. Second, plaintiff argues that a generally-applicable California contract defense prohibits enforcement of the arbitration clause because the Arbitration Agreement prohibits plaintiff from seeking public injunctive relief in any forum. Finally, plaintiff asks the court to dismiss the action rather than stay it if arbitration is required.

**1.  The FAA's Transportation-Worker Exemption**

A district court must first "assess whether a Section 1 exemption applies before ordering arbitration." In re Van Dusen, 654 F.3d 838, 846 (9th Cir. 2011). Parties cannot delegate the applicability of a Section 1 exemption to an arbitrator. Id. at 843–44.

Section 1 of the FAA exempts from its coverage all "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. To qualify for this exemption from the FAA in the Ninth Circuit, an individual must (1) be a "transportation worker" who is "engaged in interstate commerce," and (2) work for a business pursuant to an "employment contract."

7

Harden v. Roadway Package Sys., Inc., 249 F.3d 1137, 1140–41 (9th Cir. 2001) (citing Circuit City, 532 U.S. at 118).

"The plain meaning of the words 'engaged in commerce' is narrower than the more open-ended formulations 'affecting commerce' and 'involving commerce.'" Circuit City, 532 U.S. at 118. As such, "the § 1 exclusion provision [is] afforded a narrow construction." Id. The Ninth Circuit has not provided precise guidance on what it means to be engaged in interstate commerce. It has held that a "delivery driver . . . contracted to deliver packages 'throughout the United States, with connecting international service' . . . . [was] engaged in interstate commerce that is exempt from the FAA." Harden, 249 F.3d at 1140. Courts in this district have recognized that "[d]elivery drivers may fall within the exemption for 'transportation workers' even if they make interstate deliveries only 'occasionally.'" Vargas v. Delivery Outsourcing, LLC, Case No. 15-cv-03408-JST, 2016 WL 946112, at *4 (N.D. Cal. Mar. 14, 2016) (citing International Broth. Of Teamsters Local Union No. 50 v. Kienstra Precast, LLC, 702 F.3d 954, 957–58 (7th Cir. 2012) (holding that a truck driver engaged in interstate commerce where interstate deliveries were a small proportion of total workload)); see also Levin v. Caviar, Inc., 146 F. Supp. 3d 1146, 1152 (N.D. Cal. 2015). Courts in this district have declined to find that a delivery driver engaged in interstate commerce where he did not allege that he made interstate deliveries. Vargas, 2016 WL 946112, at *4 (rejecting argument that drivers deliver goods that flow in interstate commerce, instead relying on the fact that "[t]he evidence in this case . . . does not support the conclusion that Plaintiffs made interstate deliveries even occasionally"); Levin, 146 F. Supp. 3d at 1152 ("Plaintiff, however, has not shown that he or any other similarly situated delivery driver ever made trips across state lines.").

Plaintiff alleges that he "has worked as a delivery driver for DoorDash" in "San Jose, California." Compl. ¶ 3. He does not allege that he ever crossed state lines as part of his work. As such, there is no allegation that he engaged in interstate commerce under the definition of the narrowly-construed term. The Agreement is therefore not

8

exempt from the FAA under 9 U.S.C. § 1 because Magana is not a transportation worker engaged in interstate commerce, so the court need not determine whether Magana worked for DoorDash pursuant to an employment contract.

Plaintiff argues that DoorDash drivers are involved in the flow of interstate commerce because they facilitate the transportation of goods that originated across state lines. Although this would almost certainly be enough under the United States Constitution's Commerce Clause, the FAA is more narrow. Plaintiff also relies on Palcko v. Airborne Express, Inc., 372 F.3d 588, 590 (3d Cir. 2004), but that out-of-circuit case concerned materially different facts. Palcko concerned an employee who supervised a large network of interstate shipping, although she herself did not physically deliver any packages. The Third Circuit found that her work was "so closely related to interstate and foreign commerce as to be in practical effect part of it." Id. at 593. But plaintiff does not allege that he either moved or supervised movement of goods across state lines.

### 2. Whether A Generally-Applicable California Contract Law Defense Prohibits Enforcement of The Arbitration Clause

State contract defenses may invalidate arbitration clauses if those defenses apply to contracts generally. Doctor's Assocs., Inc., 517 U.S. at 687. Contracts that prevent all adjudication of public injunctive relief—in any forum—are impermissible under California law. McGill v. Citibank, N.A., 2 Cal. 5th 945, 961–62 (2017) ("insofar as the arbitration provision here purports to waive McGill's right to request in any forum such public injunctive relief, it is invalid and unenforceable under California law"). That includes contracts that compel all claims to arbitration, yet allow only pursuit of individual relief (solely on behalf of oneself) in that forum. See id.; Blair v. Rent-A-Ctr., Inc., Case No. 17-cv-02335-WHA, 2017 WL 4805577, at *5 (N.D. Cal. Oct. 25, 2017) ("the arbitrator was prohibited from 'award[ing] relief that would affect RAC account holders other than [the customer]'"); Roberts v. AT&T Mobility LLC, Case No. 15-cv-03418-EMC, 2018 WL 1317346, at *4 (N.D. Cal. Mar. 14, 2018) (arbitrator was prohibited from awarding relief for or against anyone who was not a party to arbitration); McArdle v. AT&T Mobility LLC,

Case No. 09-cv-01117-CW, 2017 WL 4354998, at *1 (N.D. Cal. Oct. 2, 2017) (arbitration agreement provided that "The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim."). However, a contract compelling arbitration of claims seeking public injunctive relief that allows the arbitrator to award such relief is valid and enforceable under McGill.

Determining whether the Arbitration Agreement prevents all adjudication of public injunctive relief in any forum requires the court to consider two issues. First, the court considers whether plaintiff's complaint seeks public injunctive relief under California law. Second, the court considers whether the Arbitration Agreement prevents plaintiff from adjudicating a claim for such relief in any forum.

"[P]ublic injunctive relief under the UCL, the CLRA, and the false advertising law is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public. Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." McGill, 2 Cal. 5th at 955 (citation omitted). A public purpose exists where a private individual seeks an injunction that would "by and large benefit[ ] the general public and . . . benefit[ ] the plaintiff, if at all, only incidentally and/or as a member of the general public." Id. (citations and internal quotation marks omitted). The McGill court observed that when a plaintiff seeks public injunctive relief, the benefits by and large do not accrue to that party, but to the general public in danger of being victimized by the same practices that the plaintiff suffered. Id. This is so "because the plaintiff has already been injured, allegedly, by such practices and is aware of them." Id. (internal quotation marks omitted). The evident purpose of such relief, therefore, is not to resolve a private dispute, but to remedy a public wrong. Id. at 961.

Here, plaintiff's operative complaint and proposed amended complaint both seek injunctive relief only for his California Labor Code claims. Compl. at 9; Dkt. 31-1 at 8.

Those claims have the primary purpose and effect of redressing and preventing harm to DoorDash's employees. Indeed, plaintiff's argument makes clear that the injunctive relief he seeks would be entirely opposite of what McGill requires—any benefit to the public would be derivate of and ancillary to the benefit to DoorDash's employees (in the form of, for example, the company's increased tax payments and employees' possible decreased dependence on assistance from the state government). Therefore, Magana does not assert a claim for public injunctive relief under state law.

Even if the complaint did seek public injunctive relief, the Arbitration Agreement does not prevent adjudication of public injunctive relief in any forum, because the arbitrator may adjudicate a claim for such relief. Magana argues that the Arbitration Agreement has a Class Action Waiver provision which states that "an arbitrator shall not have any authority to hear or arbitrate any class, collective or representative action[.]" Dkt. 32 at 18 (quoting Agreement § XI.3). But a claim for public injunctive relief is not a class, collective, or representative action. See McGill, 2 Cal. 5th at 959–61 (explaining why an action seeking public injunctive relief is not a "representative action"). The Arbitration Agreement specifically provides that "Except as provided in the Class Action Waiver, the Arbitrator may award all remedies to which a party is entitled under applicable law and which would otherwise be available in a court of law[.]" Agreement § XI.5.e. Therefore, Magana can seek public injunctive relief in arbitration under the terms of the agreement, so the agreement is enforceable under McGill. Cf. McGill, 2 Cal. 5th at 952 (addressing arbitration agreement which provided that "The arbitrator will not award relief for or against anyone who is not a party").

### 3. Whether to Stay or Dismiss This Action

Given that the action must be compelled to arbitration, defendant asks the court to stay the action pending arbitration pursuant to the FAA's terms. Plaintiff requests that the court dismiss the action rather than stay it pending arbitration. He argues that dismissal is appropriate because the case presents a serious issue of public importance to decide on appeal, namely whether the Ninth Circuit sitting en banc should overturn O'Connor

and adopt Bickerstaff.

The FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall on application of one of the parties stay the trial of the action** until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). The plain language of the FAA seems to require that the court "shall" stay the "action" pending arbitration. Johnmohammadi v. Bloomingdale's, Inc., 755 F.3d 1072, 1074 (9th Cir. 2014); see Lloyd v. HOVENSA, LLC., 369 F.3d 263, 269 (3d Cir. 2004); see also Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 88 (2000) (applying "the plain language of the statutory text" in interpreting the FAA). However, in this Circuit, "notwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." Johnmohammadi, 755 F.3d at 1074; Sparling v. Hoffman Const. Co., 864 F.2d 635, 638 (9th Cir. 1988) (citing Martin Marietta Aluminum, Inc. v. Gen. Elec. Co., 586 F.2d 143, 147 (9th Cir. 1978)); but cf. Martin Marietta Aluminum, Inc., 586 F.2d at 147 ("a request for a stay is not mandatory").

The court sees no reason to depart from the FAA's plain language in this instance. The court is not persuaded by plaintiff's argument that dismissal of this action is appropriate to expedite his attempt to seek en banc appellate review of O'Connor. Fist, the Ninth Circuit very recently rejected Bickerstaff, and this court is not persuaded that there is any legitimate basis to reconsider that opinion. Second, even if the Ninth Circuit adopted Bickerstaff, Magana would not benefit from that decision due to the material factual distinctions between Bickerstaff and Magana's complaint, as discussed above. As such, the action is STAYED pending arbitration.

**B.     Magana's Motion for a Protective Order and Corrective Notice**

12

Federal Rule of Civil Procedure Rule 23(d) provides in part:

> In conducting an action under this rule, the court may issue orders that: . . . (C) impose conditions on the representative parties or on intervenors . . . or (E) deal with similar procedural matters.

"[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. But this discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules." Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981). "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Id. at 101. "In addition, such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." Id. at 102.

The Ninth Circuit has identified "usual concerns weighing in favor of restrictions," specifically: "(1) solicitation of direct representation of class members who are not formal parties, (2) solicitation of funds and agreements to pay fees, (3) solicitation by defendants of requests to opt out, and (4) communications which may be confusing or misleading, or create an impression which reflects adversely on the court." Domingo v. New England Fish Co., 727 F.2d 1429, 1441 (9th Cir. 1984) (citing Manual for Complex Litigation § 1.41 (1973)).

Regarding the potential abuses and potential interference plaintiff alleges, the court can discern two potentially-relevant concerns: solicitation by defendants of requests to opt out of the class, and communications which may be confusing or misleading.

First, it is evident that DoorDash's communication did not request that anyone opt out of this litigation, or take any action at all specifically with respect to this litigation.

Second, it is difficult to characterize DoorDash's communication as confusing or

13

misleading at all, especially with respect to this litigation. DoorDash's communication contained a general statement about potential state legislation, a link to more information about it, and information about how drivers who agree with DoorDash can petition their government. Any effect on this case from a driver reviewing and taking action based on the email is too remote and speculative to implicate any interest in this case. The political activity of the email is also too remote from the subject of this litigation to make the omission of this action confusing or misleading.[3] This court will not require DoorDash to disclose every putative class action (including cases at the pleading stage, like this one) in every email it sends to its drivers expressing political support for the so-called gig economy.

**C.    Magana's Motion for Leave to File an Amended Complaint**

"Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 949, 951 (9th Cir. 2006) (quoting Bowles v. Reade, 198 F.3d 752, 757 (9th Cir. 1999)); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) ("this policy is to be applied with extreme liberality"). Courts have recognized that "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Forman v. Davis, 371 U.S. 178, 182 (1962). "Not all of the factors merit weight,"

---

[3] Plaintiff also argues that the communication constituted a violation California Labor Code §§ 1101(b) &1102, and that the court should order a corrective notice under Rule 23(d) based on the alleged statutory violations. The court notes that plaintiff has not sought to amend his complaint to state claims based on these alleged labor code violations, but instead seeks to adjudicate the merits in a Rule 23(d) motion. First, the record is not sufficiently clear at this early stage of litigation to weigh the potential interference with the rights of the parties, especially considering the substantive, merits-based findings plaintiff's argument would require the court to make. Second, even if it violated the labor code, DoorDash's communication is not confusing or misleading—nor does it raise any of the other usual concerns weighing in favor of restrictions—and therefore does not merit a corrective notice under Rule 23(d).

14

1 and "it is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

The court GRANTS plaintiff leave to amend the complaint.[4] Specifically, given that this court has stayed the entire action pursuant to 9 U.S.C. § 3 pending arbitration of Magana's claims, the court advises that plaintiff may either amend the complaint to add Roussel as a plaintiff with the knowledge that the entire action will be stayed pending the arbitration of Magana's claims, or he may decline to file an amended complaint.[5] Of course, Roussel's interest might be better served by filing a separate action of his own.

## CONCLUSION

For the foregoing reasons, plaintiff Magana is COMPELLED TO ARBITRATE HIS CLAIMS AGAINST DOORDASH. This action is hereby STAYED until such arbitration has been had in accordance with the terms of the Agreement. Plaintiff's motion for a protective order and corrective notice is DENIED. Finally, the court GRANTS plaintiff's motion to amend his complaint, although the action will remain stayed until arbitration of Magana's claims is complete. Plaintiff may file an amended complaint within seven days from the date of this order, or he may decline to file an amended complaint.

**IT IS SO ORDERED.**

Dated: October 22, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[4] For the reasons stated at the hearing, and because the filing does not comply with this court's local rules, plaintiff's notice of supplemental authority filed at Docket Number 43 is STRICKEN from the record.

[5] Adding Roussel as a plaintiff is not futile because he alleges that he opted out of the arbitration provision of the Arbitration Agreement. As such, it appears that he can bring his claims against DoorDash in court rather than through arbitration. Moreover, at this stage it does not appear to be futile for Roussel to attempt to allege claims on behalf of a putative class of those who have, like him, opted out of agreements to arbitrate claims against DoorDash.